**IMS SERVICES, INC., Plaintiff,**

v.

**UNITED STATES, Defendant,**

v.

**SRS TECHNOLOGIES, INC., Intervenor.**

No. 94–776C.

United States Court of Federal Claims.

Feb. 14, 1995.

Keith L. Baker, Eckert Seamans Cherin & Mellot, Washington, DC, attorney of record, for plaintiff. Sean Morgan, of counsel.

G. Scott Williams, Commercial Litigation Branch, Civ. Div., Dept. of Justice, with whom were David M. Cohen, Director, and Frank W. Hunger, Asst. Atty. Gen., attorneys of record, for defendant. Robert Jusko, Dept. of the Navy, of counsel.

Lynda Troutman O'Sullivan, Fried, Frank, Harris, Shriver & Jacobson, Washington, DC, attorney, for intervenor SRS Technologies.

## OPINION

HORN, Judge.

### PROCEDURAL BACKGROUND

Plaintiff, IMS Services, Inc. (IMS), initially filed this action on October 26, 1994, seeking declaratory and injunctive relief. The lawsuit arose following a decision by the defendant, United States, acting through the De-partment of the Navy, to reopen competition on Solicitation No. N68936–93–R–0172, after the selection of the plaintiff as the successful offeror and after issuance of a signed contract document to the plaintiff on May 2, 1994. On November 4, 1994, defendant moved to dismiss the action for lack of jurisdiction. On November 15, 1994, SRS Technologies, Inc. (SRS), an unsuccessful offeror, filed a motion to intervene in this action, which was granted on November 23, 1994. On December 12, 1994, the court issued an opinion denying defendant's motion to dismiss for lack of jurisdiction, 32 Fed.Cl. 388. In that opinion, this court found that it could exercise pre-award jurisdiction over the case, pursuant to 28 U.S.C. § 1491(a)(3) (Supp. 1991), because the government's decision to recompete the Best and Final Offer (BAFO) phase of Solicitation No. N68936–93–R–0172, without terminating the May 2, 1994 contract award to IMS, in effect, rendered the award to IMS a legal fiction.

Pursuant to discussions in court, at which counsel for all parties were present, on November 22, 1994, plaintiff filed a motion for leave to amend the complaint. The amended complaint, which was filed by the court on November 30, 1994, contains a number of revisions and additions to the original complaint. First, the provision alleging jurisdiction has been revised to specify 28 U.S.C. § 1491(a)(3) as the basis for jurisdiction. Further, in the amended complaint, plaintiff has revised a portion of its allegation regarding the Navy's decision to reopen the bidding process so that plaintiff's allegation is no longer based on information and belief, but rather, is based upon statements made by the contracting officer. Additionally, plaintiff has clarified its allegations that the Navy's decision was arbitrary, capricious and a breach of the Navy's implied-in-fact contract with IMS to consider its March 2, 1994 BAFO honestly and fairly. In Count II of the amended complaint, plaintiff adds further facts, to its allegations that the Navy's decision to reopen the contract bidding constitutes an impermissible auction, including the dates for the reopened solicitation, as detailed in "Defendant's Schedule for Contract Award," dated November 2, 1994. Defen-

dant filed its answer to the amended complaint on December 12, 1994.

On December 9, 1994, plaintiff IMS filed a motion for summary judgment, together with a joint stipulation of uncontroverted facts agreed to by the plaintiff and defendant, but not by the intervenor. Defendant filed a response and cross-motion for summary judgment on December 12, 1994. Intervenor SRS filed a response to plaintiff's motion for summary judgment and a statement of genuine issues on December 12, 1994. On December 21, 1994, IMS filed a revised memorandum of points and authorities in support of its motion for summary judgment. On December 23, 1994, the parties filed a stipulation of uncontroverted facts, this time agreed to by all parties in the action, the plaintiff, the defendant and the intervenor. SRS then filed a supplemental response to the plaintiff's cross-motion for summary judgment. On December 28, 1994, defendant filed a reply to SRS's response to plaintiff's motion for summary judgment and plaintiff filed its opposition and reply to defendant's cross-motion for summary judgment, as well as a reply to intervenor's opposition to plaintiff's motion for summary judgment.

Oral argument on the cross-motions for summary judgment was held on January 6, 1995. At the request of the court, on January 11, 1995, all parties to the litigation filed brief, post-argument, supplemental memoranda.

## FACTUAL BACKGROUND

The facts before this court are undisputed. On December 21, 1994, the parties filed a joint stipulation of fifty-five (55) uncontroverted facts, accompanied by thirty-three (33) joint exhibits. The pertinent facts are summarized below.

Plaintiff, IMS Services, Inc., is a corporation incorporated under the laws of the State of Maryland, with its principal place of business in Rockville, Maryland. The defendant, United States, conducted the procurement at issue, acting through the United States Department of the Navy, Naval Air Weapons Center, Weapons Division, Point Mugu, California. Intervenor SRS is an unsuccessful bidder in the initial procurement process conducted by the Navy.

On June 1, 1993, the Department of the Navy issued Solicitation No. N68936-93-R-0172 to obtain maintenance and operational support services for the Navy's telecommunications and local area network systems at Point Mugu, California. The solicitation required the contractor to furnish the following services: requirements analysis, design and installation of new communications equipment and networks, management, maintenance and operational support for digital, audio, video teleconferencing, intrusion alarm, security electronic access, and electronic mail systems. The solicitation contemplated the award to be a cost plus, fixed-fee, indefinite quantity, level of effort contract, with a one year base period and two (2) one year options. The cost-plus-fixed-fee contract contemplated by the solicitation would require the contractor to provide a certain amount of materials, equipment, and tools ("MET") as a part of the telecommunications support services. Until the work orders were issued to the contractor during contract performance, however, the specific quantity and type of MET that the contractor would be required to supply under the contract remained undetermined, and the solicitation provided only a list of the general types of equipment likely to be required.

On June 23, 1993, Amendment No. 0001 to the solicitation was issued. The amendment extended the closing date for receipt of initial proposals to July 8, 1993, in order to respond to contractor questions and to add and delete clauses, including the incorporation of a Department of Labor Wage Determination. Amendment No. 0002 to the solicitation was issued on June 30, 1993, for the purposes of extending the closing date, clarifying which labor categories were subject to Department of Labor Wage determination and revising the agency's estimated man-hour levels of effort for required labor categories. The government's estimated total cost for MET for each year of the contract, however, remained the same as those included in the solicitation. This second amendment, as did the original solicitation, provided specific,

broken down cost estimates by category and the following Navy total estimates for MET:

| | |
|---|---|
| Base Year One | $753,760.00 |
| Option Year One | $829,136.00 |
| Option Year Two | $912,050.00 |

In addition, the original solicitation and Amendment No. 0002 included a note to the MET cost estimate amounts which instructed prospective offerors as follows:

> The above estimates are provided to assist in proposal preparation. The offeror is responsible for inclusions of all other estimates of elements of cost deemed necessary to perform the required work.

No explanation reflecting the government's method of calculating the MET estimates, however, was included in either the solicitation or in the amendments.

The contract at issue was to be awarded to the bidder with the lowest evaluated cost, technically acceptable offer. The prospective offerors were informed that the Navy would perform a cost realism analysis of proposed costs as part of the evaluation process, and as stated in Amendment No. 0001 to the solicitation, in order to assess:

> the degree to which the cost proposal reflects the approaches and/or risk assessments made in the technical proposal as well as the risk that the offeror will provide the supplies or services for the offerored [sic] costs ... [and] the degree to which the cost included in the cost proposal accurately represents the work effort included in the technical proposal.

Ten contractors submitted proposals to the Navy on July 13, 1993, including proposals from the plaintiff, IMS Services, Inc., and from the intervenor, SRS. Five proposals were determined to be within the competitive range and susceptible to being made acceptable, including those submitted by plaintiff IMS and intervenor SRS. SRS was the only offeror which, initially, did not submit the government's MET cost estimates. At that early stage of the procurement process, SRS had proposed the lowest total cost, whereas, plaintiff IMS had proposed the second lowest total cost. SRS's proposed costs, in fact, were lower than those proposed by plaintiff IMS because SRS had utilized discounted MET cost estimates. All the other offerors

qualified as being in the competitive range had used the MET cost estimates calculated and supplied by the Navy in the solicitation documents, including the plaintiff. SRS concedes that in its first offer, it did not utilize the MET costs proposed in the solicitation, but rather calculated MET costs based on its own historical experience, which included discounts SRS believed could be achieved from its subcontractors.

The government officials who evaluated the offers, however, did not accept the lower MET cost estimates included in the SRS proposal and indicated in their pre-business clearance memorandum that "[s]ince the Government estimate for ODC [Other Direct Cost, which phrase is used as an equivalent to MET], provided in the solicitation, was meant to be the same for all offerors, the total cost for ODC's will be added back into [SRS's sub-contractor's] cost proposal." Therefore, during the cost realism analysis, conducted as part of the evaluation process, the SRS proposed MET costs were adjusted upward to equal the government estimated MET costs. The defendant's personnel indicated that the upward adjustment also was undertaken because the government found that SRS had failed to support adequately its lower proposed MET costs. According to a statement submitted to the GAO by Henry Kelley, the contracting officer, "In the absence of any substantive supporting rationale for the discounting and since I felt that this type of commercial discounting would be available to any of the potential awardees, I choose to normalize this cost element."

Moreover, as agreed to by the parties in the joint stipulations of uncontroverted facts:

> Mr. Kelley [the contracting officer] believes that, because MET cost estimates are based in part on historical cost data, the estimates incorporate any available discounts to MET costs. App.Exh. 30, Int., pp. 39–40. Mr. Kelley's belief is based upon his understanding that in a cost-type contract (which this contract was to be), the contractor has a responsibility to only pass on costs to the Government that are reasonable, allocable and allowable (FAR 31.204). *Id.* When contractors are procuring MET in connection with a cost-type

contract, it is expected that they take advantage of any commercial discounts available and in fact pass on only those discounted prices to the Government. *Id.* Additionally, there is a flow-down requirement for contractors to follow the mandates of the Competition in Contracting Act and in effect compel the contractor to insure that the Government receives the best price. *Id.* As a result, Mr. Kelley believes that the historical data should reflect any available discounts. *Id.* However, Mr. Kelley does not know whether historical MET costs were discounted. App.Exh. 30, Int., pp. 21, 39. Mr. Kelley's belief is based upon what was understood to be a true fact (as to the historical data) and a presumption on the part of Mr. Kelley (as to the prior discounting). App. Exh. 30, Int., p. 39.

\* \* \* \* \* \*

It is Mr. Kelley's understanding of the Solicitation that the Solicitation required that offerors propose the Materials/Equipment/Tools estimated amounts set forth at Attachment 4 of the Solicitation. App. Exh. 30, Int., p. 32. Mr. Kelley believes that the Note in Attachment 4 may not have conveyed this requirement clearly, but the Navy's January 12, 1994 letter to SRS, concerning the deficiencies in SRS's proposal, clarified the requirement. App. Exh. 9; App.Exh. 30, Int., pp. 32, 33.

Five offerors, including plaintiff IMS and intervenor SRS, were determined to be within the competitive range. Each was invited to submit best and final offers (BAFOs) by March 2, 1994. Both IMS and SRS, as well as several other offerors, submitted BAFOs by the March 2, 1994 deadline. On January 12, 1994, the contracting officer, Henry Kelley, wrote to SRS and informed the company that the proposal submitted to the Navy was "technically unacceptable, but capable of being made acceptable." He listed several deficiencies which were in need of revision. One of the deficiencies noted was SRS's proposed MET cost discounts. Kelley stated: "The amounts shown for other Direct Costs (material/equipment/tools) represent the Government's estimate (not-to-exceed amount) for performance of the contract and should be proposed as stated without any discounting." In a January 28, 1994 letter, SRS responded to the government regarding the deficiencies noted by the contracting officer. In reference to the MET discounts, SRS stated:

SRS has proposed the most probable cost for materials, equipment, and tools based upon the discounts available to [SRS's subcontractor] as stated in our proposal. However, SRS understands the Government's wish to normalize bids and will therefore use the amounts shown in the solicitation for Other Direct Costs (material/equipment/tools) when submitting any future cost proposal.

In the correspondence between SRS and the Navy, the Navy did not inform SRS that its MET cost discounts would have been considered had they been supported properly, and SRS did not question the correspondence from Kelley regarding how to propose the MET costs.

The contracting officer received BAFOs from each of the offerors in the competitive range and determined that plaintiff IMS should be the awardee. All the BAFOs submitted by the competitive range offerors, including the BAFO received from SRS, proposed the Navy's MET cost estimates. On April 1, 1994, subsequent to the contracting officer's determination that IMS should be awarded the contract, the contracting officer transmitted a letter to all unsuccessful offerors indicating that IMS was the apparent successful offeror, and offered all the disappointed bidders the opportunity to protest the small business set aside status of IMS. As a result of the contracting officer's April 1, 1994 letter, several of the unsuccessful offerors, including SRS, requested a debriefing.

On May 2, 1994, the Navy awarded Contract No. N68936–94–D–0058 to IMS, as the offeror who had furnished the lowest cost, technically acceptable offer in response to the solicitation. Also on May 2, 1994, the Navy held debriefing meetings, which were attended by unsuccessful offerors, including SRS, to discuss the rejected offers. At the debriefing, the contracting officer appears also to have informed SRS of the approximate value of the price offered by IMS.

On May 6, 1994, SRS filed a protest with the General Accounting Office (GAO), *SRS Technologies*, B–254425.2. In the GAO protest, SRS alleged that the Navy had conducted misleading negotiations with SRS. SRS contended that the Navy had instructed it not to discount the MET cost estimates and had indicated that SRS must prepare its offer by utilizing the MET cost estimates outlined in the solicitation. Stated otherwise, SRS contended that the Navy had failed to inform SRS that the government evaluators would have considered SRS's discounted MET costs if they had been supported properly in the offer. SRS argued to the GAO that had it been allowed to incorporate the discounted MET cost estimates included in its initial proposal, rather than the government, MET cost estimates included in the solicitation, SRS's proposed BAFO cost would have been lower than IMS's proposed BAFO cost, resulting in a contract award to SRS, instead of to IMS. In a statement provided by the contracting officer in reply to the GAO protest, Kelley responded to SRS's arguments by indicating:

> I was rather surprised by this statement and indicated that since this was an RFP everything was subject to negotiation. I further stated that SRS was free to propose in any manner they so choose [sic], however, that was not to say I would not have made adjustments to their proposal for cost realism (removed the discount).

On September 14, 1994, the GAO sustained SRS's protest on the basis that misleading discussions had occurred between the Navy and SRS regarding the MET cost estimates requirement. The GAO concluded that "... the Navy misled SRS when the agency informed that firm that it could only propose the government's equipment estimate when in fact the agency would have accepted lower proposed costs for the equipment, if the costs were properly supported." The GAO recommended that the Navy reopen discussions and request a new round of BAFOs from the competitive range offerors, but suggested that termination of the May 2, 1994 contract with IMS *could be delayed until following* contractor selection, in the event IMS was not successful in receiving the award after the renewed BAFO round.

In conformance with the recommendations in the GAO decision, on November 3, 1994, the Navy issued Amendment No. 0003 to the solicitation, reopening competition under the solicitation. The Navy, however, did not cancel the contract award to plaintiff IMS. The reopened bidding competition allowed offerors, including the plaintiff and the intervenor, to participate in a new round of BAFOs. Moreover, the Navy did not limit the reopened competition to MET costs alone, for the following reasons: (1) the offerors' BAFOs had expired; (2) the offerors had proposed specific key program personnel, which the Navy was reluctant to rely upon due to the amount of time that had passed since the offers were submitted; and (3) the Navy believed it was possible that the offerors would need to restructure their proposals if they proposed MET discounts. Therefore, all offerors were free to submit new offers including revised MET cost estimates, with discounts, if properly substantiated.

On October 26, 1994, plaintiff IMS filed suit in the United States Court of Federal Claims, seeking declaratory relief, a temporary restraining order, a preliminary injunction and a permanent injunction, to bar the government from conducting a new round of BAFOs on Solicitation No. N68936–93–R–0172, following award of the contract to plaintiff on May 2, 1994. In a "Notice Regarding Schedule for Contract Award," and several amendments thereto, filed in this court by the defendant, dated November 2, 1994, the government laid out an elaborate schedule, including issuance of an amendment to the solicitation, receipt of revised proposals, a new technical evaluation and qualification process, a new round of BAFOs, and a new final evaluation, leading to issuance of a contract. Currently, the defendant is proceeding on the new round of BAFOs and is evaluating the revised offers, prior to issuing a final contract.

## DISCUSSION

Jurisdiction in the above-captioned case is conferred upon the United States of Court of Federal Claims pursuant to the Tucker Act, 28 U.S.C. § 1491(a)(3). On December 12,

1994, this court issued an opinion in this case denying defendant's November 4, 1994 motion to dismiss for lack of jurisdiction. *IMS Services, Inc. v. United States*, 32 Fed.Cl. 388 (1994). Despite the fact that plaintiff IMS received a document on May 2, 1994 titled "award/contract," this court accepted jurisdiction of this matter as a pre-award claim, pursuant to 28 U.S.C. § 1491(a)(3). In rendering its decision, this court wrote:

In the above-captioned case, a document titled award/contract was issued to plaintiff IMS on May 2, 1994. Nonetheless, the court believes that based on the facts of the above-captioned case, this court does have jurisdiction to review plaintiff's claim as a pre-award protest. The fact that for many months the government has not issued orders to IMS to proceed to begin work on the May 2, 1994 contract, and now has indicated that it will not do so, but rather choose to reopen the solicitation, evaluation and selection process, demonstrate that the plaintiff IMS has no more certainty that it will be awarded the contract than any other bidder at this point in time. In fact, defendant has stated that it cannot be sure which offeror will receive the contract after the renewed round of BAFOs. Although plaintiff has a piece of paper titled award/contract, which states that the contract has been awarded to IMS Services, plaintiff has no certainty or reasonable expectation that IMS will be directed to proceed under the terms and conditions of the May 2, 1994 award. As a result, that piece of paper means very little. The court agrees that a finding that plaintiff's claims are in the nature of a post-award protest would be to engage in a legal fiction. All plaintiff has is a mere

hope that after the resolicitation process, plaintiff may once again be selected, and that, this time, the defendant will order it to proceed to performance. The facts presented by the instant case are in harmony with the requirements of 28 U.S.C. § 1491(a)(3), that the claim for injunctive relief be tied to a pre-award phase of the procurement process in order to vest jurisdiction in the United States Court of Federal Claims under that section.

Defendant has renewed its motion to dismiss for lack of jurisdiction within the contents of its cross motion for summary judgment. The court, however, DENIES defendant's renewed motion to dismiss for the reasons previously articulated in its December 12, 1994 published opinion. Therefore, this court continues to review the presently pending cross-motions for summary judgment under the applicable standards governed by pre-award protests.

■ Summary judgment in this court should be granted only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Rule 56 of this court is patterned on Rule 56 of the Federal Rules of Civil Procedure (Fed.R.Civ.P.) and is similar in language and effect.[1] Both Rules provide that summary judgment "... shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c) of the Rules provides that in order for a motion for summary judgment to be granted, the moving party bears the burden

1. By enactment of the Court of Federal Claims Technical and Procedural Improvements Act of 1992, Pub.L. No. 102–572, the United States Claims Court was renamed the United States Court of Federal Claims. In accordance with General Order 33 issued by the United States Court of Federal Claims, the court adopted the rules of the United States Claims Court. The substance of the rules of the court, discussed herein, is unaffected by the legislation, other than with respect to the name change of the court and, therefore, the name change of the rules. General Order 33, however, also indicates that if there is a conflict between the new statute

and the rules, the statute will control. RUSCC stands for Rules of the United States Claims Court, now the Rules of the United States Court of Federal Claims, which is abbreviated RCFC.

In general, the Rules of this Court are closely patterned upon the Federal Rules of Civil Procedure. Therefore, precedent under the Federal Rules of Civil Procedure is relevant to interpreting the Rules of this Court, including Rule 56. *See Jay v. Sec'y DHHS*, 998 F.2d 979, 982 (Fed. Cir.1993); *Imperial Van Lines Int'l Inc. v. United States*, 821 F.2d 634, 637 (Fed.Cir.1987); *Lichtefeld–Massaro, Inc. v. United States*, 17 Cl.Ct. 67, 70 (1989).

of showing that there is no genuine issue of material fact and is entitled to judgment as a matter of law. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *Creppel v. United States,* 41 F.3d 627, 630–31 (Fed.Cir.1994); *Meyers v. Asics Corp.,* 974 F.2d 1304, 1306 (Fed.Cir.1992); *Rust Communications Group v. United States,* 20 Cl.Ct. 392, 394 (1990); *Lima Surgical Assoc., Inc. Voluntary Employees' Beneficiary Ass'n. Plan Trust v. United States,* 20 Cl.Ct. 674, 679 (1990), *aff'd,* 944 F.2d 885 (Fed.Cir.1991).

Disputes over facts which are not outcome determinative under the governing law will not preclude the entry of summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Summary judgment will not be granted if "... the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury [judge] could return a verdict for the non moving party." *Id.; see also Uniq Computer Corp. v. United States,* 20 Cl.Ct. 222, 228–29 (1990).

When reaching a summary judgment determination, the judge's function is not to weigh the evidence, but to determine whether there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 249, 106 S.Ct. at 2510; *see, e.g., Cloutier v. United States,* 19 Cl.Ct. 326, 328 (1990), *aff'd,* 937 F.2d 622 (Fed.Cir.1991). The judge must determine whether the evidence presents a disagreement sufficient to require submission to fact finding, or if the issues presented are so one-sided that one party must prevail as a matter of law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 250–52, 106 S.Ct. at 2511. When the record could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial, and the motion must be granted. *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). If, however, the nonmoving party produces sufficient evidence to raise a question as to the outcome of the case, then the motion for summary judgment should be denied. As indicated above, any doubt over factual issues must be resolved in favor of the party opposing summary judgment, to whom the benefit of all presumptions and inferences runs. *Id.; see also Litton Industrial Products, Inc. v. Solid State Systems Corp.,* 755 F.2d 158, 163 (Fed.Cir.1985); *H.F. Allen Orchards v. United States,* 749 F.2d 1571, 1574 (Fed.Cir.1984), *cert. denied,* 474 U.S. 818, 106 S.Ct. 64, 88 L.Ed.2d 52 (1985).

The initial burden on the party moving for summary judgment, to produce evidence showing the absence of a genuine issue of material fact, may be discharged if the moving party can show that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986); *see also Lima Surgical Assoc.,* 20 Cl.Ct. at 679. If the moving party makes such a showing, the burden is placed on the nonmoving party to show that a genuine factual dispute exists by presenting evidence establishing the existence of an element of its case upon which it bears the burden of proof. *Celotex Corp. v. Catrett,* 477 U.S. at 322, 106 S.Ct. at 2552; *Lima Surgical Assoc.,* 20 Cl.Ct. at 679. If under no scenario can the nonmoving party present the evidence to support its case, then there should be no genuine need for the parties to undertake the time and expense of a trial, and the moving party should prevail without further proceedings.

Pursuant to Rule 56, the motion for summary judgment may succeed, whether or not accompanied by affidavits and/or other documentary evidence in addition to the pleadings already on file. *Celotex Corp. v. Catrett,* 477 U.S. at 324, 106 S.Ct. at 2553. Generally, however, in order to prevail, the nonmoving party will need to go beyond the pleadings, by use of evidence such as affidavits, depositions, answers to interrogatories and admissions, in order to show that a genuine issue for trial exists. *Id.*

In the instant case, both plaintiff and defendant have filed motions for summary judgment. The intervenor has filed a motion in support of defendant's motion for summary judgment and in opposition to plaintiff's motion for summary judgment. The fact that all the parties argue in favor of

summary judgment and allege an absence of genuine issues of material fact, however, does not relieve the court of its responsibility to determine the appropriateness of summary disposition in the particular case. *Prineville Sawmill Co. v. United States*, 859 F.2d 905, 911 (Fed.Cir.1988) (citing *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1391 (Fed.Cir.1987)). "[S]imply because both parties moved for summary judgment, it does not follow that summary judgment should be granted one or the other." *LewRon Television, Inc. v. D.H. Overmyer Leasing Co.*, 401 F.2d 689, 692 (4th Cir.1968), *cert. denied*, 393 U.S. 1083, 89 S.Ct. 866, 21 L.Ed.2d 776 (1969); *see also Levine v. Fairleigh Dickinson Univ.*, 646 F.2d 825, 833 (3d Cir.1981); *Home Ins. Co. v. Aetna Cas. & Sur. Co.*, 528 F.2d 1388, 1390 (2d Cir.1976); *Ishida v. United States*, 31 Fed.Cl. 280, 284 (1994). Cross-motions are no more than a claim by each party that it alone is entitled to summary judgment, and the making of such inherently contradictory claims does not establish that if one is rejected the other is necessarily justified. *Rains v. Cascade Indus., Inc.*, 402 F.2d 241, 245 (3d Cir.1968); *Bataco Industries, Inc. v. United States*, 29 Fed.Cl. 318, 322 (1993). The court must evaluate each party's motion on its own merits, taking care to draw all reasonable inferences against the party whose motion is under consideration. *Mingus Constructors, Inc.*, 812 F.2d at 1391.

On December 23, 1994, the three parties in the above-captioned case filed a joint stipulation of uncontroverted facts, as well as individual statements indicating that each party believed that no material facts exist which should prevent this court from rendering a decision on summary judgment. Furthermore, during a conference held on December 13, 1994, and at the oral argument held on January 6, 1995, at both of which all parties were represented, the court provided each party the opportunity to raise and discuss any possible remaining factual disputes. All parties confirmed at those court appearances that any factual disputes between the parties were not material and should not prevent the court from rendering a decision based on the cross-motions for summary judgment presently pending before the court. After careful review of the joint stipulations of uncontroverted facts and the attached exhibits, the cross-motions for summary judgment and attachments, as well as the oral arguments presented by counsel, this court agrees that the above-captioned case is ripe for summary disposition.

Plaintiff alleges that the original procurement process conducted by the defendant, pursuant to Solicitation No. N68936–93–R–0172, which resulted in the May 2, 1994 contract with IMS, was managed properly. Plaintiff further argues that defendant's decision to reopen the competition, and solicit a new round of BAFOs, after contracting with IMS as the prospective awardee with the lowest, technically acceptable offer, was arbitrary, capricious, and in violation of law and regulation. And, plaintiff also asserts that defendant treated it unfairly when the government did not terminate the contract with IMS, and revealed the plaintiff's BAFO price to at least one offeror, apparently SRS. For relief, IMS has requested that this court enjoin the continuation of the reopened solicitation and renewed BAFO process and prohibit award of the contract under the resolicitation schedule.

Although the defendant, on at least one occasion during these proceedings, asserted that it believes that the initial procurement process was not flawed, defendant bases its defense to plaintiff's request for an injunction on its position that the reopening of the competition was based on a reasonable and proper decision by the Navy, which complied with a proper decision and recommendation by the GAO. Defendant further argues that in order for the Navy to consider all offerors' BAFOs fairly and honestly, a resolicitation was necessary and proper. Defendant, therefore, alleges that the government, relying on advice from the GAO to request another round of BAFOs, did not act arbitrarily or capriciously, and that its actions were consistent with sound, government procurement procedures.

The standard of review in cases, such as the instant one, in which a plaintiff requests injunctive relief, places a heavy burden on the plaintiff. Injunctive relief is con-

sidered a drastic measure. When such relief is requested, the court should exercise caution. *N.V. Philips Gloeilampenfabrieken v. United States,* 1 Cl.Ct. 783, 784 (1983). In order to determine whether IMS is entitled to the unusual measure of injunctive relief, this court must examine the following four factors:

[1] Whether there is a reasonable likelihood that IMS will prevail on the merits of its complaint;

[2] Whether injunctive relief will not be contrary to the public interest;

[3] Whether IMS will suffer irreparable harm if preliminary relief is not granted, and cannot obtain adequate relief at law if the injunction is not granted;

[4] That the balance of hardships on plaintiff and defendant tips in the movant's favor.

*Reebok Intern. Ltd. v. Baker,* 32 F.3d 1552, 1555 (Fed.Cir.1994); *FMC Corp. v. United States,* 3 F.3d 424, 427 (Fed.Cir.1993); *see also Compliance Corp. v. United States,* 22 Cl.Ct. 193, 199 (1990), *aff'd* 960 F.2d 157 (Fed.Cir.1992); *TRW Environmental Safety Systems Inc. v. United States,* 18 Cl.Ct. 33 (1989).

As explained by the United States Court of Appeals for the Federal Circuit:

No one factor, taken individually, is necessarily dispositive. If a preliminary injunction is granted by the trial court, the weakness of the showing regarding one factor may be overborne by the strength of the others. If the injunction is denied, the absence of an adequate showing with regard to any one factor may be sufficient, given the weight or lack of it assigned the other factors, to justify the denial.

*FMC Corp.,* 3 F.3d at 427. In other words, "[t]he court will first consider whether [IMS] is entitled to injunctive relief on the merits of its complaint, which will determine whether it is necessary to consider the remaining three factors." *Compliance Corp.,* 22 Cl.Ct. at 199.

In the case of a disappointed bidder in a pre-award case, there is no express contract. *Dynalectron Corp. v. United States,* 4 Cl.Ct. 424, 428, aff'd 758 F.2d 665 (Fed.Cir.1984). Therefore, the court must determine whether the government has satisfied the implied contractual condition that each responsive bid to a solicitation received by the government must be honestly and fairly evaluated. *Prineville Sawmill Co. v. United States,* 859 F.2d at 909; *CACI, Inc. –Federal v. United States,* 719 F.2d 1567, 1573 (Fed.Cir.1983); *Coastal Corp. v. United States,* 713 F.2d 728, 730 (Fed.Cir.1983); *Skytech Aero, Inc. v. United States,* 26 Cl.Ct. 251, 253–54 (1992); *Data Transformation Corp. v. United States,* 13 Cl.Ct. 165, 171 (1987); *Dynalectron Corp.,* 4 Cl.Ct. at 428; *Space Age Eng'g, Inc. v. United States,* 4 Cl.Ct. 739, 741 (1984).

Although IMS does not know officially if it will be the disappointed bidder in the renewed round of BAFOs, it certainly can be considered a disappointed bidder pursuant to the original BAFO selection process, due to the decision by the Navy to reopen the procurement process. This action, therefore, can be reviewed as a suit brought by plaintiff IMS for breach of the Navy's implied-in-fact contract to treat IMS's bid, including its March 2, 1994 BAFO, honestly and fairly. *See, e.g., National Forge Co. v. United States,* 779 F.2d 665, 667 (Fed.Cir. 1985) (citing *United States v. John C. Grimberg Co.,* 702 F.2d 1362, 1367 (Fed.Cir.1983); *CACI, Inc. –Federal,* 719 F.2d at 1573). According to the case law, "[a] breach occurs in such situations if the contracting agency acts in an arbitrary and capricious, i.e., irrational or unreasonable, manner...." *NKF Engineering Inc. v. United States,* 805 F.2d 372, 376 (Fed.Cir.1986) (citing *National Forge Co.,* 779 F.2d at 667; *CACI, Inc. –Federal,* 719 F.2d at 1573; *Burroughs Corp. v. United States,* 617 F.2d 590, 597, 223 Ct.Cl. 53 (1980); *Keco Industries, Inc. v. United States,* 492 F.2d 1200, 1203–04, 203 Ct.Cl. 566 (1974) (*Keco II*). Consequently, in the instant case, the court must consider: (1) whether the Navy acted arbitrarily, capriciously, or not in accordance with law when it reopened the procurement competition and (2) whether plaintiff has demonstrated that injunctive relief is proper given the facts presented in the above-captioned case.

As a part of its response to plaintiff's claims for injunctive relief, defendant argues that the injunctive relief requested by plaintiff, if awarded, would result in an order to the Navy for specific performance of the contract with IMS, which the defendant argues is not within the court's powers. In support of its argument, defendant cites to *CACI, Inc. –Federal,* 719 F.2d at 1575; *Scanwell Laboratories, Inc. v. Shaffer,* 424 F.2d 859, 864 (D.C.Cir.1970); *Unified Industries Inc. v. U.S.,* 24 Cl.Ct. 570, 575 (1991); and *Arrowhead Metals, Ltd. v. United States,* 8 Cl.Ct. 703, 711 (1985), for the proposition that this court does not have jurisdiction to select a contractor or to award specific performance of a contract.

In *Scanwell Laboratories,* 424 F.2d 859, the court stated that "[i]t is indisputable that the ultimate grant of a contract must be left to the discretion of a government agency; the courts will not make contracts for the parties. *Id.* at 869. It is also incontestible that that discretion may not be abused." The applicability of this doctrine to the Claims Court is also well established. *See Unified Industries,* 24 Cl.Ct. at 575; *Arrowhead Metals, Ltd.,* 8 Cl.Ct. at 711. "From the beginning, the Tucker Act has never been held to be a valid jurisdictional source for this court to base the award of a general equitable remedy such as specific performance." *Cleveland v. United States,* 9 Cl.Ct. 741, 746 (1986) (citing *United States v. King,* 395 U.S. 1, 3, 89 S.Ct. 1501, 1502, 23 L.Ed.2d 52 (1969); *Richardson v. Morris,* 409 U.S. 464, 465–66, 93 S.Ct. 629, 630–31, 34 L.Ed.2d 647 (1973); *Jesko v. United States,* 3 Cl.Ct. 730, 732 (1983); *Busby School of the Northern Cheyenne Tribe v. United States,* 8 Cl.Ct. 596, 601 (1985)).

■■■ While this court recognizes the accuracy of the defendant's assertions that this court should not order award of a contract to a specific party, this court does have authority, pursuant to 28 U.S.C. § 1491(a)(3), to grant injunctive relief in appropriate pre-award claims. Clearly, 28 U.S.C. § 1491(a)(3) provides authority for this court to order such injunctive relief in appropriate cases in order to ensure that the procurement process is conducted fairly and honest-

ly, and that there has been no arbitrary or capricious behavior on the part of the government agency or contracting officer. *National Forge Company,* 779 F.2d at 667 (citing *Grimberg Co.,* 702 F.2d at 1367); *Scanwell Laboratories, Inc.,* 424 F.2d at 869; *see also CACI, Inc. –Federal,* 719 F.2d at 1575; *Unified Industries,* 24 Cl.Ct. at 575–6; *Keco Industries, Inc. v. United States,* 428 F.2d 1233, 192 Ct.Cl. 773 (1970) (*Keco I* ).

■■■ As a general proposition, however, the court's review of plaintiff's claim for injunctive relief should be limited and undertaken with a high degree of respect for the agency's decision-making process, because contracting officers may exercise wide discretion when they conduct the bid evaluation process. *RADVA Corp. v. United States,* 17 Cl.Ct. 812, 818 (1989), *aff'd* 914 F.2d 271 (Fed.Cir.1990). Interference with the procurement process by the courts should be a rare occurrence and the exercise of injunctive powers should occur only in "extremely limited circumstances." *Grimberg Co.,* 702 F.2d at 1372; *see also CACI, Inc. –Federal,* 719 F.2d at 1581; *Magnavox Electronic Systems Co. v. United States,* 26 Cl.Ct. 1373, 1380 (1992). Stated otherwise, "the scope of review under the 'arbitrary and capricious' standard is narrow and a court is not to substitute its judgment for that of the agency." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 43, 103 S.Ct. 2856, 2866, 77 L.Ed.2d 443 (1983); *Skytech Aero, Inc.,* 26 Cl.Ct. at 254.

"It is well established that contracting officials are accorded broad discretion in conducting a negotiated procurement, ... including the decision to request additional best and final offers." *Hayes International Corp. v. United States,* 7 Cl.Ct. at 686 (citing *Sperry Flight Systems Div. of Sperry Rand Corp. v. United States,* 548 F.2d 915, 212 Ct.Cl. 329, 339–40 (1977)). Stated otherwise, "[E]ffective contracting demands broad discretion." *Lockheed Missiles & Space Co., Inc. v. Bentsen,* 4 F.3d 955, 958 (Fed.Cir. 1993) (citing *Burroughs Corp.,* 617 F.2d at 598; *Sperry Flight Systems,* 548 F.2d 915, 212 Ct.Cl. at 339–40; *NKF Engineering Inc.,* 805 F.2d at 377; *Tidewater Management Servs. Inc. v. United States,* 573 F.2d 65, 73,

216 Ct.Cl. 69 (1978); *RADVA Corp. v. United States*, 17 Cl.Ct. at 819). Therefore, "[b]ecause of the breadth of discretion given to the contracting officer in negotiated procurement, the burden of showing this discretion was abused, and that the action was 'arbitrary and capricious' is certainly much heavier than it would be in a case of formal advertising." *Burroughs Corp.*, 617 F.2d at 598 (citing *Keco II*, 492 F.2d at 1204). Furthermore, 48 C.F.R. § 15.611(c) permits a procurement agency the right to request additional BAFOs when it is in the best interest of the government.

In a comprehensive fashion, the court in *Baird Corp. v. United States*, 1 Cl.Ct. 662 (1983) opined on the scope of this court's review of a government agency's procurement decisions as follows:

> Judicial review of an agency's pre-award procurement decision is, and should be, extremely limited in scope. The court should not substitute its judgment on such matters for that of the agency, but should intervene only when it is clearly determined that the agency's determinations were irrational or unreasonable. It is the burden of the aggrieved bidder to demonstrate that there was no rational basis for the agency's determinations. *Princeton Combustion Research Laboratories, Inc. v. McCarthy*, 674 F.2d 1016, 1021–22 (3d Cir. 1982); *M. Steinthal & Co. v. Seamans*, 455 F.2d 1289, 1301, 1306 (D.C.Cir.1971). Judicial intrusions into the procurement process are generally limited, circumspect and infrequent, *Allen M. Campbell Co. Gen. Con., Inc. v. Lloyd Wood Const. Co.*, 446 F.2d 261, 264 (5th Cir.1971), as they should be. *M. Steinthal & Co. v. Seamans, supra*, 455 F.2d at 1300. *See also Allen M. Campbell Co. v. United States*, 199 Ct.Cl. 515, 522, 467 F.2d 931 (1972) (Nichols, J., concurring). Where injunctive relief is sought, which relief is deemed drastic in nature, the court must exercise great caution and even then, the aggrieved bidder should be made to establish its right to such drastic relief by means of clear and convincing evidence. *Goldammer v. Fay*, 326 F.2d 268, 270 (10th Cir.1964). Even in the exercise of sound judicial discretion, in the absence of overriding public interest considerations, the court should refuse to look favorably on declaratory or injunctive relief requests in pre-award bid protest actions, and should not overturn any pre-award procurement determination unless the aggrieved bidder establishes that there was no rational basis for the agency's determination. *M. Steinthal & Co. v. Seamans, supra*, 455 F.2d at 1301.

*Id.* at 664; *see also NKF Engineering, Inc.*, 805 F.2d at 376; *Health Systems Marketing & Development Corp. v. United States*, 26 Cl.Ct. 1322, 1325 (1992); *Caddell Construction Co. v. United States*, 7 Cl.Ct. 236, 240–41 (1985); *Hayes International Corp. v. United States*, 7 Cl.Ct. 681, 684–85 (1985); *Kinetic Structures Corp. v. United States*, 6 Cl.Ct. 387, 393 (1984); *F. Alderete General Contractors Inc. v. United States*, 4 Cl.Ct. 482, 493 (1984).

As stated in *TRW Environmental Safety Systems, Inc.*, 18 Cl.Ct. at 43:

> To prevail in this court under § 1491(a)(3), it is axiomatic, therefore, that a heavy burden is on the aggrieved bidder to establish *by clear and convincing evidence* that the agency's determination was unreasonable or irrational. *DeMat Air [Inc. v. United States]*, 2 Cl.Ct. [197] at 202 [ (1983) ]. As a general proposition, while a contracting officer may exercise wide discretion in his evaluation of bids and in the application of procurement regulations, particularly in negotiated procurements, the ultimate obligation of the agency is to treat all bidders fairly and give full consideration to all bids. *Id.* (quoting *Keco Industries v. Laird*, 318 F.Supp. 1361, 1364 (D.D.C.1970)); *Heli–Jet v. United States*, 2 Cl.Ct. 613, 618 (1983) (quoting *Ingersoll–Rand Co. v. United States*, 2 Cl.Ct. 373, 376 (1983). Concomitantly, the Claims Court should exercise its equitable authority only if award would be the result of arbitrary and capricious action by the contracting officer to deny a qualified firm the opportunity to compete fairly. *Electro–Methods [Inc. v. United States]*, 7 Cl.Ct. [755] at 763 [ (1985) ]. Moreover, *absent overriding public interest*, the Claims Court should refuse to look favorably on a

petition for injunctive relief in bid protest cases. *DeMat Air*, 2 Cl.Ct. at 202.

*TRW Environmental Safety systems*, 18 Cl. Ct. at 43 (emphasis in original).

In *Keco I*, 428 F.2d 1233, 192 Ct.Cl. 773 (1970), the court recognized the right of a disappointed bidder to sue to enforce the right to have a bid fairly considered by a government agency, without arbitrary or capricious behavior on the part of the agency officials. In *Keco II*, 492 F.2d 1200, 203 Ct.Cl. 566 (1974), the Court of Claims articulated a methodology for evaluating disappointed bidder cases and undertook "... to develop rules and standards for judicial review of the various administrative steps in the process, and the scope of the duties owed at each stage by the Government to the allegedly aggrieved participant." *Keco Indus.*, 492 F.2d at 1203. The *Keco II* court set forth four factors to be considered when determining whether the government has acted arbitrarily or capriciously towards a bidder-claimant: 1) whether there was subjective bad faith on the part of the procuring officials, thus depriving the bidder of fair and honest consideration of its proposal; 2) whether there was a reasonable basis for the government's decision; 3) the degree of discretion given to the procurement officials by applicable statutes and regulations which, under *Keco II*, determines the degree of proof of error necessary to demonstrate a right to recovery; and, 4) whether government officials violated pertinent statutes or regulations, which, if violated, may form the basis for recovery, but which need not automatically constitute grounds for such recovery. *Id.* Moreover, as stated in *Keco II:* "The application of these four general principles may well depend on (1) the type of error or dereliction committed by the Government, and (2) whether the error or dereliction occurred with respect to claimant's own bid or that of a competitor." *Id.*

The initial solicitation in the instant case, issued on May 27, 1993, required:

THE CONTRACTOR IS TO PROVIDE ALL LABOR, MATERIAL, AND REQUIRED ADMINISTRATIVE SUPPORT NEEDED TO PROVIDE DESIGN, ENGINEERING, HARDWARE AND SOFTWARE FOR NETWORKS IN ACCORDANCE WITH SECTION C AND ATTACHMENT 1, DESCRIPTION/SPECIFICATION/WORK STATEMENT AND SPECIFIED IN INDIVIDUAL DELIVERY ORDERS.

The solicitation further required all offerors to provide an estimate for MET costs. The contractors understood, however, that until the actual performance of the contract, the specific quantity and type of MET that the contractor would be required to supply under the contract could not be determined fully. Therefore, the solicitation provided government calculated estimates for MET costs, which the Navy determined were realistic estimates. In a footnote to the original solicitation and to the language in Amendment No. 0002, offerors were instructed as follows:

The above estimates are provided to assist in proposal preparation. The offeror is responsible for inclusions of all other estimates of elements of cost deemed necessary to perform the required work.

The solicitation and the amendments are silent regarding submission of discounts and are also silent on whether the offerors are required to submit the government MET cost estimates.

Intervenor SRS agrees that in its initial offer it did not utilize the MET costs estimates proposed in the solicitation and the solicitation amendment, but rather chose to calculate its MET costs, based on its own historical experience, and to offer discounts SRS believed could be achieved from its subcontractors. The government officials who evaluated the offers, however, rejected the lower MET cost estimates included in the SRS proposal. The Navy's pre-business clearance memo, dated January 4, 1993, states, "[s]ince the [g]overnment estimate for [equipment], provided in the solicitation, was meant to be the same for all offerors, the total cost for [equipment] will be added back into [SRS's and its subcontractor's] cost proposal." According to the statement of the contracting officer, Henry Kelley: "In the absence of any substantive supporting rationale for the discounting and since I [the contracting officer] felt that this type of commercial discounting would be available to any

of the potential awardees, I choose to normalize this cost element." Kelley also indicated that: "In the absence of any supporting data, from SRS or any of the other offerors, to clearly demonstrate that the Government's methodology of cost realism was flawed, it was my determination to continue to normalize the ODC cost element." Therefore, during the cost realism analysis, conducted as part of the evaluation process, the SRS proposed MET costs were adjusted upward to equal the government estimated MET costs.

The Navy contracting officer, Henry Kelley, wrote to SRS on January 12, 1994, indicating that the SRS proposal was unacceptable as submitted, but that it was capable of being made acceptable. The letter included a discussion of MET costs, as follows: "The amounts shown for other Direct Costs (material/equipment/tools) represent the Government's estimate (not-to-exceed amount) for performance of the contract and should be proposed as stated without any discounting." In response, SRS wrote to the Navy on January 28, 1994, stating that "... SRS understands the Government's wish to normalize bids and will therefore use the amounts shown in the solicitation for Other Direct Costs (materials/equipment/tools) when submitting any future cost proposal." SRS did not object to, or try to explore what they perceived to be the government's intention to normalize the MET cost estimates.

On March 2, 1994, SRS submitted its BAFO, proposing the solicitation's MET cost estimates, apparently under the impression that it had no other choice. In a letter dated April 1, 1994, Kelley informed SRS of the government's intention to award a contract to IMS, and that, therefore, negotiations were complete, and no subsequent proposal revisions would be accepted.

The Navy does not dispute that it did not affirmatively inform SRS that if SRS had submitted additional justification or support for its discounted METs, beyond the mere statement that the basis was "historical data," the Navy might have found the SRS's proposed MET costs to be acceptable. According to the joint stipulations, in a May 2, 1994 debriefing, Kelley informed SRS that,

"if SRS had proposed MET costs different from the MET costs specified in the Solicitation, the Navy would have been required to consider SRS's proposed MET costs," as it was required to review each of the bids offered. As stated in Kelley's submission at the time of the GAO protest, because it was a negotiated procurement, "... SRS was free to propose in any manner they so choose...." and "everything was subject to negotiation."

Kelley also has indicated, however, that he probably would have found any SRS proposed discounted MET costs to be unrealistic because he believes there was no basis within the solicitation for offerors to propose realistic MET costs other than the government proposed MET cost estimates. According to Kelley:

> The solicitation specified the labor categories with hours and an estimate of other Direct Costs (material/equipment/tools) necessary for performance. The amount shown for ODC's was the Government's estimate for materials that would be required incidental to the performance of services. This estimate was based on historical cost information modified by best engineering judgement. Specific material requirements would not be known until such time as definitive delivery orders were processed.

In his statement to the GAO, Kelley also indicated that at the time of the debriefing, "had I considered the discounting to be a legitimate approach, I would have apprised all offerors that I was considering this approach and solicit information regarding potential discounting available to them."

After IMS was selected as the prospective awardee, SRS filed a protest with the GAO. The GAO reviewed the protest and issued a written decision, dated September 14, 1994, including the following language:

> The contracting officer states that he explained his rationale for normalizing SRS's proposed equipment costs—that is, that in the absence of "substantive supporting rationale" for SRS's lower estimated costs, the contracting officer could not accept SRS proposed costs. The contracting officer also states that he informed SRS that

the firm could have continued to propose its lower equipment costs and was surprised to learn from SRS that the firm had understood his written discussions as indicating that it was required to propose the government's stated estimate for equipment....

We find from our review of the record that SRS was prejudicially misled during discussions. As described above, the contracting officer decided to normalize SRS's initially proposed equipment costs to the government's estimate because SRS failed to sufficiently support its proposed costs. In this regard, the contracting officer states that he would have considered SRS's proposed equipment costs had they been sufficiently supported. The Navy did not inform SRS during discussions that its proposed equipment costs were not supported; rather, the Navy instructed SRS to use the government's equipment costs estimate for its proposed equipment costs....

... the Navy misled SRS when the agency informed that firm that it could only propose the government's equipment estimate when in fact the agency would have accepted lower proposed costs for the equipment, if the costs were properly supported.

The Navy's decision to reopen the solicitation at issue was made in response to the GAO protest decision quoted above. The GAO also recommended that the Navy reopen discussions and request a new round of BAFOs from competitive range offerors. Further, the GAO recommended that if an offeror other than IMS is selected for award following the re-evaluation, the Navy then should terminate the contract with IMS for the convenience of the government. The Navy acceded to the GAO direction and proceeded to reopen the competition. Although this court's review of the Navy's actions in the procurement at issue inevitably will entail a review of the GAO decision, whether or not the GAO's determination was proper is not, however, the dispositive issue before this court. At issue is a review of the propriety of the Navy's decision to redo the BAFO phase of the contract selection process.

The 1984 Competition in Contracting Act, 31 U.S.C. §§ 3551–3556 (Supp. IV 1986), sets forth the role of the GAO in bid protest claims. That statute provides guidelines to both the GAO and to the procurement agency involved in a protest. The United States Court of Appeals for the Federal Circuit has interpreted this statute as follows:

This statute 'codifies and strengthens the bid protest function currently in operation at the General Accounting Office (GAO).' H.R.Conf.Rep. No. 861, 98th Cong., 2d Sess. 1435, reprinted in 1984 U.S.Code Cong. & Admin.News 697, 1445, 2123. The Act authorizes the Comptroller General to entertain protests by disappointed bidders. Action on the procurement is stayed during the GAO proceeding. 31 U.S.C. § 3553(c)(1), (d)(1). The Comptroller General is empowered to determine whether the solicitation, proposed award, or award complies with statute and regulation, 31 U.S.C. § 3554(b)(1).

If the Comptroller General determines that it does not so comply, he shall recommend that the agency take specific corrective action, including 'award[ing] a contract consistent with the requirements of such statute and regulations.' 31 U.S.C. § 3554(b)(1)(E). The head of the procuring agency must report to the Comptroller General if the agency has not fully implemented the Comptroller General's recommendations within 60 days, 31 U.S.C. § 3554(e)(1), and the Comptroller General must report annually to Congress each instance of agency noncompliance. 31 U.S.C. § 3554(e)(2). The Act further provides that in a subsequent judicial action relating to the procurement, the Comptroller General's recommendation and the agency's report of its noncompliance 'shall be considered to be part of the agency record subject to review.' 31 U.S.C. § 3556.

*Honeywell, Inc. v. United States,* 870 F.2d 644, 648 (Fed.Cir.1989). To be sure, the GAO's expertise in procurement matters is respected and acknowledged by the federal courts. Additionally, this court recognizes the direction of the United States Court of Appeals for the Federal Circuit that procure-

ment agencies normally should follow the comptroller general's recommendation.

[A] procurement agency's decision to follow the Comptroller General's recommendation, even though that recommendation differed from the contracting officer's initial decision, [is] proper unless the Comptroller General's decision itself [is] irrational. 'If the court finds a reasonable basis for the agency's action, the court should stay its hand even though it might, as an original proposition, have reached a different conclusion as to the proper administration and application of the procurement regulations.' *M. Steinthal & Co. v. Seamans*, 455 F.2d 1289, 1301 (D.C.Cir.1971).

*Honeywell, Inc. v. United States*, 870 F.2d at 648.

 It is also true, however, that "... the existence of a GAO decision does not limit this court to a review of that decision. Being by its very nature an advisory opinion, the GAO decision is not controlling on the parties or on this court." *Health Systems Marketing & Dev. Corp.*, 26 Cl.Ct. at 1325. Furthermore, "[t]hat an agency's procurement decision can be based on advice from the GAO, however, does not make the GAO's decision dispositive upon judicial review of the agency action." *Essex Electro Engineers, Inc. v. United States*, 3 Cl.Ct. 277, 282 (1983).

 Although noncompliance with a GAO recommendation may not be the preferred action of the agency, it may be the correct action. Therefore, it is the agency's responsibility to fully and independently evaluate all recommendations given by the GAO. While this court recognizes that a procurement agency normally will accept the advice of the GAO, it is imperative that the agency perform its own evaluation of the procurement process before making final decisions. If, in its own expertise, the procurement agency determines that the GAO's recommendation is misguided, it has a responsibility to make up its own mind and to act on its own advice. If the agency acts contrary to the GAO decision, the agency must report the noncompliance to the GAO for report to the Congress, as required by 31 U.S.C. § 3554(e)(1). Ultimately, this court must determine whether or

not the Navy acted properly and was not arbitrary and capricious during the procurement, including a review of the agency decision to follow the GAO recommendation and to reopen another round of BAFOs.

In the instant case, the contracting officer made the decision to reopen the BAFO phase of the procurement based on the recommendation of the GAO and on the authority provided in FAR § 15.611(c). The applicable regulations states, in pertinent part:

(c) After receipt of best and final offers, the contracting officer should not reopen discussions unless it is clearly in the Government's interest to do so.... If discussions are reopened, the contracting officer shall issue an additional request for best and final offers to all offerors still within the competitive range.

48 C.F.R. § 15.611(c) (1989).

The differing interpretations of the MET estimate requirement is the crux of the parties' dispute in this case. Plaintiff IMS argues that the first procurement was not flawed and that the Navy always intended to normalize the MET cost estimates, even though it failed to so indicate specifically in the solicitation and/or in amendments thereto. Plaintiff also notes that all the offerors in the competitive range, other than SRS, understood the defendant's intentions and offered the government proposed MET cost estimates. Although, based on its own historical cost information, defendant maintains that the MET cost estimates should be normalized, it asserts that if discounted estimates had been supported properly in an offer, it would have considered the discounts. The Navy argues that it never was its design to force all offerors to submit and adhere to the government estimates in a negotiated procurement. Intervenor SRS, however, asserts that if it had been informed that properly supported discounted MET cost estimates would have been considered, it would have provided discounts with proper support, and, ultimately, would have offered the lowest BAFO price, resulting in a contract award to SRS.

The issues raised by the instant solicitation do not appear to raise "... an obvious error

in drafting, a gross discrepancy, or an inadvertent but glaring gap," and cannot, therefore, be considered a "patent ambiguity." *WPC Enterprises, Inc. v. United States*, 323 F.2d 874, 876, 163 Ct.Cl. 1 (1963); *see also Fry Communications, Inc. v. United States*, 22 Cl.Ct. 497, 504 (1991). The ambiguities in the solicitation process regarding how to propose the MET cost estimate numbers, although not patent, however, do lend themselves to more than one possible interpretation. The court in *WPC Enterprises* set forth the governing ambiguity doctrine, as follows:

> Both plaintiff's and defendant's interpretations lie within the zone of reasonableness; neither appears to rest on an obvious error in drafting, a gross discrepancy, or an inadvertent but glaring gap; the arguments, rather, are quite close in balance. It is precisely to this type of contract that this court has applied the rule that if some substantive provision of a government-drawn agreement is fairly susceptible of a certain construction and the contractor actually and reasonably so construes it, in the course of bidding or performance, that is the interpretation which will be adopted—unless the parties' intention is otherwise affirmatively revealed. [Citations omitted.] This rule is fair both to the drafters and to those who are required to accept or reject the contract as proffered, without haggling. Although the potential contractor may have some duty to inquire about a major patent discrepancy, or obvious omission, or a drastic conflict in provisions [citations omitted], he is not normally required (absent a clear warning in the contract) to seek clarification of any and all ambiguities, doubts, or possible differences in interpretation. The Government, as the author, has to shoulder the major task of seeing that within the zone of reasonableness the words of the agreement communicate the proper notions—as well as the main risk of a failure to carry that responsibility.

*WPC Enterprises, Inc.*, 323 F.2d at 876 (citations omitted); *see also Fry Communications, Inc.*, 22 Cl.Ct. at 504.

The court agrees that in the initial procurement process, the government did not require, specifically, that offerors must submit the government supplied MET costs, as stated in the solicitation and in Amendment No. 0002. Moreover, the subsequent correspondence between the contracting officer and SRS, regarding the parties' MET cost proposals, potentially was misleading, even in the context of a negotiated procurement, and could result in more than one logical interpretation and in possible confusion. It is true that in the overall context of a negotiated procurement, all portions of the offer should be understood as subject to negotiation until final selection of a contractor. Nonetheless, the words of the January 12, 1994 letter from the contracting officer to SRS on their face were clear when they indicated that the government MET estimates "... should be proposed as stated without any discounting."

In sum, if the government intended that the offerors must propose the government MET cost estimates, the solicitation at issue failed to give clear direction in that regard. Moreover, although the written correspondence from the contracting officer to SRS, after receipt of the initial offer, appears to have called for SRS to propose the government MET estimates, the contracting officer later submitted a statement to the GAO to the contrary, indicating that SRS remained free to propose discounted rates, as long as they were fully supported. Therefore, the Navy, as the author of the solicitation, failed to "... communicate the proper notions ..." of the parties' responsibility in proposing MET cost estimates. *WPC Enterprises*, 323 F.2d at 876. As a result of the Navy's failure clearly and accurately to communicate the requirement regarding proposal of the MET cost estimates to the competitive offerors, the procurement process was flawed and the GAO and Navy reached a rational and reasonable decision that a renewed round of BAFOs should be conducted.

Plaintiff also has asserted that injunctive relief is proper because the Navy's decision to reopen the competition violates procurement regulations, specifically FAR § 15.610, in that the second round of BAFOs resulted

in an impermissible auction. FAR § 15.610(e)(2) provides, in relevant part:

> The following conduct *may* constitute prohibited conduct....
>
> (2) Auction techniques such as—
>
> (ii) Advising an offeror of its price standing relative to another offeror ...; and
>
> (iii) Otherwise furnishing information about other offerors' prices.

48 C.F.R. § 15.610(e)(2) (1992) (emphasis added).

In this action, defendant initially decided to award the contract to plaintiff IMS. During the discussions with SRS, following selection of IMS as the contractor, the Navy appears to have disclosed the approximate amount of plaintiff's bid to at least one other offeror, presumably SRS. Subsequently, after SRS protested to the GAO, defendant decided to reopen the competition and conduct a new round of BAFOs with all the offerors in the competitive range. Plaintiff argues that the decision to conduct a new round of BAFOs constitutes an improper "auction," in violation of FAR § 15.610(e)(2), which prohibits "auction techniques." Plaintiff IMS has asserted that the government's actions are prejudicial to the fair and honest consideration of its bid and impacts IMS's competitive position in the resolicitation process, thereby undermining the integrity of the procurement process.

In response to this assertion, defendant cites to *Logicon, Inc. v. United States,* 22 Cl.Ct. 776 (1991), which states that "[t]he court is required to determine whether plaintiff has proved that any violation of this regulation in letter or spirit is outweighed by the agency's interest in obtaining compliance with RFP requirements." *Logicon, Inc.,* 22 Cl.Ct. at 784. Moreover, the *Logicon* court indicated that "[a]uctions are not *per se* improper," *id.* at 787, and stated:

> '[T]here is nothing inherently illegal in the conduct of an auction in a negotiated procurement....' *Faxon Co.,* 67 Comp.Gen. 39, 43 (1987). FAR § 15.610(e) states only that an auction 'may' violate applicable regulations. '[G]enerally the risk of an auction is secondary to the need to preserve the integrity of the competitive pro-

curement system through appropriate corrective action....' *Contact Int'l Corp.,* 90-1 CPD ¶ 481, at 5 (citation omitted). *Id.*

The *Logicon* court also wrote:

> a prohibited auction may occur if an agency reopens discussions and calls for further BAFOs after disclosure of an apparent successful offeror's price, but only if the prejudice to the disappointed offeror outweighs the broader goal of maintaining procurement integrity.

*Id.* at 788.

A recent case issued by the United States Court of Appeals for the Federal Circuit cites to *Logicon* and FAR § 15.610(d) (on leveling, a prohibited procurement practice, which is similar but not identical to auction techniques), and articulates guidelines for prohibited auction practices as follows:

> LaBarge argues that the government conducted an improper auction, in violation of FAR § 610(d) (1984), when it made the request for best and final offers after Daily had revealed to Victaulic that LaBarge had been the lowest bidder in the initial offer and after the September 13 phone call to Victaulic's contract administrator. Because the FAR provision clearly was violated here, the Board look to *Logicon, Inc. v. United States,* 22 Cl.Ct. 776 (1991), for guidance in determining under what circumstances a request for best and final offers is improper after a government official has revealed information about a potential contractor's bid to a competitor. The plaintiff in Logicon, like LaBarge, claimed relief on the theory that the government violated the regulations prohibiting auctions by reopening negotiations and requesting a best and final offer after its earlier bid had been revealed to its competitor. *Id.* at 781-82. We also look to the detailed analysis of Logicon for guidance as to when negotiations may continue after FAR section 15.610(d) has been violated.
>
> As the court noted, several competing concerns come into play. First, is 'the bastion of federal procurement policy that all offerors must possess equal knowledge of the same information in order to have a

valid procurement.' *Id.* at 788. All offerors cannot have equal knowledge if one knows the previous bid of another. Secondly, the government has a strong interest in ensuring that the procurement meets its needs. Thirdly, in a negotiated procurement, [FN5] the contracting officer is entrusted with a relatively high degree of discretion. *Burroughs Corp. v. United States*, 617 F.2d 590, 597–98, 223 Ct.Cl. 53, 65 (1980). The contracting officer's discretion extends to the application of procurement regulations, which includes reopening discussions and requesting a best and final offer. [FN6] *Logicon, Inc.*, 22 Cl.Ct. at 782; *DLM & A v. United States*, 6 Cl.Ct. 329, 331 (1984); FAR § 15.600 (1984) (the FAR 'prescribes policies and procedures for selection of a source or sources in competitive negotiated acquisitions'). A rule that prevents the government from requesting further offers after one potential contractor's bid has been revealed protects the first of these concerns but can impinge upon the second and third.

The Logicon court balanced these concerns:

[A] prohibited auction may occur if an agency reopens discussions and calls for further [best and final offers] after disclosure of an apparent successful offeror's price, but only if the prejudice to the disappointed offeror outweighs the broader goal of maintaining procurement integrity. This circumstance depends on whether the agency expresses substantial concerns regarding the sufficiency of the proposal. . . . The court concludes that an improper auction would occur if, absent a rational or reasonable basis for deeming that the offerors fell short of meeting the Navy's needs in this procurement . . . [the Navy] were to act on its intention to reopen negotiations and accept new [best and final offers]. 22 Cl.Ct. at 788.

Like the Logicon court, we hold that the government may request further bids after violation of the FAR prohibiting revelation of information concerning a potential contractor's bid only if the government has a rational or reasonable basis for doing so unrelated to the violation.

*LaBarge Products, Inc. v. West*, 46 F.3d 1547, 1554–55 (Fed.Cir.1995).

■ This court finds that given the facts of the instant case, the potential prejudice to IMS, if any, does not outweigh the broader goal of maintaining procurement integrity. IMS has not provided this court with sufficient evidence to demonstrate that it has been harmed significantly by the publication of its March 2, 1994 BAFO price. Moreover, all competitive offerors, including plaintiff, were invited to and did engage in a new round of BAFOs. In that second BAFO round, all offerors specifically were given the opportunity to submit discounted MET costs, different from the government estimated MET cost numbers, if properly supported. In fact, IMS has disclosed to the court that it did propose discounted MET cost estimates in its most recent BAFO offer, pursuant to the reopened competition. In weighing the relative, potential harm to plaintiff and defendant, it appears that, in this case, although not perfect, or even an ideal practice, the integrity of the procurement process has not been compromised so severely by disclosure of the IMS approximate original offer that an injunction is warranted. This is especially true in light of the GAO protest decision and the advice the GAO gave to the Navy regarding how to preserve the integrity of the procurement process by reopening the BAFO round.

■ As a final matter, the court addresses the Navy's decision not to terminate the contract awarded to IMS until after the resolicitation process. In its protest decision, the GAO specifically advised the Navy that "[i]f an offeror other than IMS is selected for award as a result of the agency's reevaluation, the Navy should terminate IMS's contract for the convenience of the government." Defendant's rationale for its decision not to terminate the IMS award until after the resolicitation process was complete is that it merely was following the direction and recommendation of the GAO. There appears to be no specific prohibition against entering upon resolicitation of a procurement, without first terminating an award. Because, however, the court recognized that the government

was attempting to preserve all its options by preserving the option of issuing work orders to IMS if IMS won the contract after the renewed BAFO round without also having to pay termination costs, in order to afford IMS a fair opportunity to be heard, this court concluded, for the purposes of preaward jurisdiction, that the May 2, 1994 contract with IMS was a "legal fiction".

Based on the above, it is clear that plaintiff has failed to meet the requirements necessary to invoke the injunctive relief requested. This court does not believe that plaintiff has presented sufficient evidence to prevail on the merits of its complaint. Plaintiff has also failed to demonstrate that public interest considerations require injunctive relief in this case and that the hardship on plaintiff exceeds the potential hardship born to the defendant in this matter, if an injunction were to be issued and the procurement, once again, were to be interrupted. Plaintiff retains its remedies pursuant to the termination clauses included in the May 2, 1994 contract with the Navy, if the contract is not finally awarded to plaintiff IMS. Therefore, plaintiff is not left without any adequate remedy at law.

### CONCLUSION

After careful review of the record before this court, including the joint stipulations of uncontroverted facts, the submitted written exhibits and the parties' written and oral arguments, as well as the relevant law, the court concludes that plaintiff has failed to meet the burden of proof necessary to demonstrate that injunctive relief is proper in the above-captioned pre-award protest. The plaintiff has failed to demonstrate that the defendant acted arbitrarily and capriciously when it followed the recommendation of the GAO to reopen the competition at issue. Moreover, this court has concluded that defendant has met its burden of proof on summary judgment to demonstrate that its procurement decisions were rational and reasonable. For the reasons discussed above, defendant's motion for summary judgment, as

supported by the arguments of the intervenor, is GRANTED, and plaintiff's motion for summary judgment is DENIED. No injunction will be entered by this court in the instant case. The plaintiff, however, does retain its right to pursue remedies for damages from the Navy, available to it under the May 2, 1994 contract.

**IT IS SO ORDERED.**