QualMED, INC., Plaintiff,

v.

OFFICE OF CIVILIAN HEALTH AND MEDICAL PROGRAM OF the UNIFORMED SERVICES, Captain John E. Montgomery in His Official Capacity as Director of the Office of Civilian Health and Medical Program of the Uniformed Services, and United States of America, Defendants,

and

Foundation Health Federal Services, Inc., Intervenor–Defendant.

No. 95–D–2686.

United States District Court, D. Colorado.

July 25, 1996.

**1230**

James E. Scarboro, David C. Warren, Denver, CO, for Plaintiff.

James A. Dobkin, Richard S. Ewing, Washington, DC, Richard C. Kaufman, Michael E. Hegarty, Denver, CO, Thomas P. Humphrey, Washington, DC, for Defendants.

Richard P. Holme, Denver, CO, for Intervenor–Defendant.

## MEMORANDUM OPINION AND ORDER

DANIEL, District Judge.

### I. INTRODUCTION

This procurement and government contracting dispute is before the Court on the parties' cross motions for summary judgment. Plaintiff QualMed, Inc. ("QualMed") seeks summary judgment in its favor on the grounds that a bid protest recommendation of the General Accounting Office ("GAO"), recommending termination of a substantial government contract award to QualMed and subsequent award of the contract to Foundation Health Federal Services, Inc. ("Foundation"), and the decision of the Office of Civilian Health and Medical Program of the Uniformed Services ("OCHAMPUS"), adopting this recommendation, were arbitrary and capricious and/or unlawful.[1] Defendants and Intervenor–Defendant Foundation request that judgment enter as a matter of law in their favor, arguing that the GAO's and OCHAMPUS' actions were rational and lawful and that no genuine issue of material fact exists as a matter of law as to QualMed's claims.

For the reasons discussed below, I find that the GAO's decision was neither arbitrary nor capricious, an abuse of discretion or contrary to law. I further find that OCHAMPUS' decision to adopt the GAO's recommendation was rational. Accordingly, Defendants' Joint Motion for Summary Judgment is GRANTED, and QualMed's Motion for Summary Judgment is DENIED.

### II. FACTS[2]

OCHAMPUS oversees the Civilian Health and Medical Program of the Uniformed Ser-

---

1. QualMed originally sought a preliminary injunction. At the hearing on the preliminary injunction held on February 1, 1996, both parties agreed that this case is ripe for resolution on summary judgment motions. Accordingly,

QualMed withdrew its motion for preliminary injunction and now seeks judgment as a matter of law as well as a permanent injunction.

2. The facts relied on by the parties in this case are voluminous. The Court discusses herein only

vices ("CHAMPUS"), a program under which dependents of active and retired military personnel and their dependents are eligible to receive health care. In 1992, OCHAMPUS conducted a negotiated procurement for the award of a health care contract for CHAMPUS beneficiaries in California and Hawaii. The Request for Proposals ("RFP") stated that the contract was to be awarded for an initial transition period of six months with five subsequent one-year options. However, it is presumed that due to the significant amount of time and costs associated with implementing such a contract, the contract term will last five years provided satisfactory performance by the awardee. On July 27, 1993, the contract was awarded to Aetna Government Health Plans, Inc. ("Aetna").

Protests to the GAO were filed by both QualMed and Foundation. In response, the GAO sustained these protests. *Foundation Health Fed. Services, Inc.; QualMed, Inc.,* B–254397.4 *et al.,* December 20, 1993, 94–1 CPD ¶ 3 at 43. The basis for the GAO's decision was a finding that OCHAMPUS had "failed to reasonably evaluate the merit of the offerors' technical approaches as they related to the task of containing health care costs," and the cost analysis was inconsistent with the evaluation criteria in the solicitation. *Id.* at 41. Specifically, the GAO found that OCHAMPUS' failure to evaluate the technical proposals, "what the [Source Selection Evaluation Board] chair called 'the heart of managed care'—was left by default, to the Lewin–VHI consultant who had constructed the agency's independent cost estimate." *Id.* at 37. Thus, the GAO found that "Lewin–VHI personnel created the methodology for evaluating cost proposals", and that "OCHAMPUS personnel, including the source selection authority, did not appear to realize that Lewin–VHI had substituted [certain of] its own ... figures for the estimates of health care costs proposed by the offerors." *See* the GAO Decision at issue herein, *Aetna Government Health Plans, Inc.; Foundation Health Services, Inc.,* B–

254397.15 *et al.,* July 27, 1995, 95–2 CPD ¶ 129 at 3, n. 3 (hereinafter "GAO Decision").

As a result of these findings, the GAO recommended that OCHAMPUS revise the solicitation to accurately advise offerors of the method by which cost proposals would be evaluated, or reopen discussions with the offerors and request revised proposals before proceeding with the selection. *Foundation,* 94–1 CPD ¶ 3 at 43. The GAO further recommended that Aetna be allowed to perform the contract in the meantime. *Id.* OCHAMPUS implemented the recommendation by substantially revising the RFP as well as the internal methodology for evaluation proposals. Lewin–VHI ("Lewin") continued to play a key role in the procurement, helping with the revisions to the RFP and the methodology. *See* GAO Decision at 3 & n. 3.

Thereafter, OCHAMPUS undertook the most recent phase of the procurement by issuing an amended RFP in February 1994. This RFP stated that OCHAMPUS would award the contract to the offeror submitting the proposal that was "most advantageous" to the Government, that it would develop a best-buy score for each offeror to assist it in making that decision, and that OCHAMPUS reserved the right to award the contract to an offeror other than the offeror having the highest best-buy score if that was in the best interests of the Government. The RFP resulted in an award of the contract to QualMed on March 31, 1995.

QualMed asserts that the decision to award the contract to it was based on the determination that QualMed's proposal was more advantageous than other proposals, including Foundation's, and was less costly.[3] The "best buy" calculation resulted in Foundation having a slightly higher score than QualMed; however, QualMed argues that OCHAMPUS viewed the scores as essentially equal. QualMed contends that the Source Selection Authority ("SSA") concluded that an award to QualMed was "most advantageous" to and would be in the "best interests" of the Government for a number of

---

the facts that it deems material to the summary judgment motions.

3. Because the pleadings and supporting documents were filed under seal, I will not disclose any financial or other information that may be deemed confidential.

reasons, including: (i) it proposed to place at risk more of its own funds; (ii) it proposed to use the same health care subcontractor in Hawaii that Aetna was using so that the beneficiaries would not have to change providers; (iii) the total expected cost to the Government was lower; and (iv) the relationship of Foundation's evaluated health care cost to the cost level at which the Government would become 100% responsible for any higher health care costs was less favorable to the Government than QualMed's.

Defendants and Intervenor–Defendant Foundation assert that the GAO found that Foundation's technical proposal was scored more highly than QualMed's, and that Foundation's proposed contract price was slightly less than QualMed's. However, the evaluation of cost proposals by Lewin and a third party evaluator, Actuarial Research Corporation ("ARC"), resulted in QualMed having a lower evaluated price. Notwithstanding these factors, it is undisputed that Foundation was evaluated as having the "best buy" proposal by a slim margin over QualMed.

In April 1995, after the contract was awarded to QualMed, Aetna and Foundation filed timely protests with the GAO. A key issue in the protests was QualMed's stated intention to use Value Behavioral Health ("VBH"), a subsidiary of Value Health, Inc. ("VHI"), as a subcontractor.[4] Specifically, the protests asserted that VBH's participation in the procurement as a proposed subcontractor created an unmitigatable organizational conflict of interest ("OCI").[5] The OCI arose from the fact that Lewin, the consultant who had been a key evaluator in the procurement, was also a subsidiary of VHI. As such, Lewin may have been in a position to significantly influence the outcome of the procurement. In fact, Defendants and Intervenor–Defendant Foundation assert that the award to QualMed was improperly based on the fact that Foundation's proposal was evaluated as having a slightly

higher cost than QualMed's proposal, which cost differential they attribute solely to the cost evaluation process in which Lewin was involved.

QualMed disputes Defendants' and Intervenor–Defendant Foundation's arguments that VBH's participation in the proposal created an OCI. QualMed asserts that VBH was included in the proposal because OCHAMPUS repeatedly gave its blessing to VBH's participation as a subcontractor, and agreed that any OCI could be mitigated by a plan executed in 1994 between VBH, Lewin and OCHAMPUS.

To put this mitigation plan in the proper context in reference to QualMed's argument, the history of the conflicts of interest involving the various VHI affiliates must be examined. The first OCI arose in October 1992 when a representative of Lewin (then known as Lewin–ICF) wrote OCHAMPUS and informed it that VHI was planning to acquire both Lewin–ICF and Value Health Services, Inc. ("VHS"), another subsidiary of VHI. The letter noted that Foundation's proposal for the California/Hawaii procurement intended to use VHS as a supplier. In an effort to mitigate any conflict that might arise from the acquisition, the letter explained that VHS and Lewin would remain separate corporations with independent management, and that Lewin proposed to implement procedures to ensure that no sensitive information would be disclosed to VHI or VHS. The letter emphasized that VHS' portion of Foundation's proposal was "very small," estimating that it represented six hundredths of one percent of the total price.

OCHAMPUS then undertook an analysis of the OCI issue and determined that a conflict of interest would exist after the acquisition of Lewin by VHI. OCHAMPUS based its decision on its belief that, due to the new business relationship and the possibility of bias arising from a financial interest that

<hr>

4. Foundation raised numerous other protest issues to the GAO which are not discussed herein because they are not relevant to the pending motions for summary judgment.

5. The Federal Acquisition Regulations define an OCI to mean "that because of other activities or relationships with other persons, a person is un-

able or potentially unable to render impartial assistance or advice to the Government, or the person's objectivity in performing the contract work is or might be otherwise impaired, or a person has an unfair competitive advantage." 48 C.F.R. ¶ 9.501.

Lewin might gain in VHI or its affiliates, Lewin would not be able to render impartial assistance or advice to the agency. OCHAMPUS informed Lewin that there was no action that it could take (other than preventing the acquisition by VHI) which the agency would consider adequate to resolve the conflict of interest.

However, after a meeting to discuss these concerns, the agency agreed to allow VHI to submit a proposed plan to mitigate the OCI. This plan ("the 1992–93 Plan") was subsequently submitted to and approved by OCHAMPUS as sufficient to adequately resolve and/or mitigate the OCI. The 1992–93 Plan represented, among other things, that Lewin and VHS had not been affiliated prior to the acquisition, had not shared directors or officers, and that no significant conflict of interest existed. The Plan also contained certain steps to mitigate such a conflict, if it did exist.

The GAO, in its July 27, 1995 decision that QualMed challenges in this case, stated that "[t]he agency's need for Lewin to continue to provide assistance in the procurement appears to have been a significant factor in the agency's decision to approve the plan." GAO Decision at 6. The GAO also found that certain commitments made in the Plan, such as Lewin conducting its services on a "blind" basis and OCHAMPUS (or Health Affairs) subjecting Lewin's work to close scrutiny, were never done. *Id.* The 1992–93 Plan effectively expired in July 1993, when OCHAMPUS awarded the contract to Aetna, since Foundation did not propose the use of VHS in the later reprocurement.

The OCI issue next arose in 1994, after OCHAMPUS revised its RFP and requested revised proposals, which were due on April 4, 1994. Less than a month before the closing date, QualMed initiated negotiations with VBH, a provider of managed mental health care, concerning the possibility of VBH serving as a subcontractor in its proposal. VBH, like Lewin, is a wholly owned subsidiary of VHI, a fact of which QualMed was well aware. Representatives of Lewin, VBH and VHI asked OCHAMPUS to execute a plan, based on the 1992–93 Plan, to mitigate any

conflict of interest that arose because of VBH's participation as a subcontractor.

A plan was executed by the parties ("the 1994 Plan"), which QualMed contends was identical in all material respects to the 1992–93 Plan. QualMed asserts that this Plan, approved by OCHAMPUS, adequately mitigated any OCI involving VBH. Although QualMed was not a party to this contract, QualMed asserts that it informed OCHAMPUS that if it had any concerns regarding VBH, QualMed would substitute another mental health provider in VBH's place. In response, OCHAMPUS advised that it would approve VBH's participation as a subcontractor to QualMed if proper documentation was presented, which QualMed asserts occurred.

QualMed further asserts that OCHAMPUS not only approved VBH's participation as a subcontractor during the procurement, but later affirmatively represented to the GAO at the hearing held on Foundation's and Aetna's protests that no OCI existed because the 1994 Plan resolved the potential conflict. QualMed also contends that OCHAMPUS informed the GAO at the protest hearing that none of the matters raised by the protestors would cause OCHAMPUS to conclude otherwise.

On July 27, 1995, the GAO issued its decision on Foundation's and Aetna's protest that QualMed now challenges. In this decision, the GAO found that the OCI was not mitigated by the 1994 Plan, stating as follows:

> The record includes no contemporaneous analysis by the contracting officer or any other official at OCHAMPUS of the conflict of interest or of a recommended course of action for avoiding, neutralizing, or mitigating it. Unlike the case with the 1992 plan, the record contains no letter from the contracting officer (or anyone else at the agency) advising QualMed or any Value Health affiliate that the 1994 plan had been approved. There is also nothing in the record comparable to the December 16, 1992, letter to Lewin–VHI instructing the firm about procedures which would be undertaken to ensure the conflict was adequately mitigated, nor is there any record of agency consideration of any such procedures.

GAO Decision at 9. The GAO rejected QualMed's argument that the conflict was merely an "apparent" conflict which "has no place in determining whether agencies have met their responsibilities under FAR subpart 9.5," finding that "Lewin–VHI's dual roles placed it in an actual organizational conflict of interest because of the prospect that it would be unable to render impartial advice to OCHAMPUS." *Id.* at 18.

The GAO not only found that the 1994 Plan was inadequate to mitigate the OCI, but also found that the OCI could not be mitigated under any circumstances. In that regard, the GAO stated that, although the OCI was not *per se* unmitigatable, the OCI could not be mitigated because "of the significant dollar value of the VBH subcontract, Lewin–VHI's historical role, and the largely subjective nature of the evaluation of probable health care costs in this procurement, where probable cost calculations turn on whether the Lewin–VHI evaluators have been persuaded that an offeror will succeed in managing health care as proposed." *Id.* at 17.

Finally, the GAO rejected QualMed's request to "submit an offer 'untainted' by the alleged conflict." *Id.* at 22. This finding was based on the following: (i) "[n]either QualMed nor any of the Value Health entities took reasonable steps to ensure that the plan that purported to identify the conflict disclosed the relevant facts fully and correctly;" (ii) QualMed, VBH and Lewin "failed to adequately discharge their responsibilities"; and (iii) QualMed was "plainly willing to benefit" from VBH's affiliation if it could do so. Thus, the GAO concluded that "QualMed's actions do not justify delaying this procurement further in order to allow QualMed another opportunity to submit" such a proposal. *Id.* at 21–22.

The GAO concluded that unequivocal corrective action was required to protect the integrity of the procurement process resulting from this OCI. *Id.* at 18. The recommendation made by the GAO was that, due to the "agency's concern about further delays in a procurement which has already been subject to significant delays and where, due to the size of the procurement, delays lead to substantial additional costs," OCHAMPUS "terminate QualMed's contract for the convenience of the government and make award to Foundation, if otherwise appropriate." *Id.* at 22.

This recommendation was made after GAO reviewed a voluminous record containing all of the documents generated concerning this procurement, conducted a four day evidentiary hearing, three days of which were devoted exclusively to the OCI issue, and received lengthy pre-hearing and post-hearing briefs from all the interested parties. Defendants and Intervenor–Defendant Foundation assert that, contrary to QualMed's contentions, all of the arguments, except one, advanced by QualMed in this action were made to, and considered by, GAO during this proceeding.[6]

Defendants and Intervenor–Defendant Foundation assert that the GAO's recommendation and findings were based on the following undisputed facts: (i) VBH and Lewin shared the same corporate secretary and three of the four members of the board of directors of the two companies were the same, facts which were not revealed to OCHAMPUS; (ii) the VHI affiliates work together in seeking to develop new business, another fact not revealed to OCHAMPUS; (iii) Lewin personnel scored proposals, including VBH's, for certain mental health trend factors and participated in meetings in which all aspects of mental health proposals were discussed and, as a result of which, changes were made to scores of the proposals; (iv) Lewin played a prominent role in

---

6. For example, Defendants assert that the following arguments were raised: (i) GAO improperly "combined" VBH and Lewin; (ii) revenue figures overstate the significance of the VBH subcontract; (iii) protesters challenging an OCI must establish bias in the evaluation; (iv) QualMed is not blameworthy or responsible; (v) deference should be given to the approval of the 1994 Plan by OCHAMPUS; (vi) rejection of the 1994 Plan is tantamount to a *per se* prohibition on OCI's; and (vii) Federal Acquisition Regulation 9.504(e), found at 48 C.F.R. ¶ 9.504, precludes the award to Foundation. Further, Defendants assert that the only argument raised herein that was not raised before the GAO, that it was ARC that made the determination to award the contract to QualMed rather than Lewin, is waived because it could have been raised at the GAO hearing or in the post-hearing briefs to the GAO or OCHAMPUS.

written and oral discussions with all offerors regarding cost proposals, including discussions regarding mental health care cost proposals; (v) QualMed knew of the OCI involving VBH and Lewin at the time it submitted its California/Hawaii proposal to OCHAMPUS; (vi) QualMed took no affirmative action to resolve the OCI which it knowingly created by proposing VBH as a subcontractor, and that it did nothing to ensure that accurate facts were provided to OCHAMPUS; and (vii) Foundation's proposal was evaluated by OCHAMPUS as the "best buy" offer—*i.e.*, the proposal which had the highest combined score as a result of the technical and cost evaluations. *See* GAO Decision at 9–10, 14–15, 17, 21–22.

After the GAO issued its recommendation, OCHAMPUS invited QualMed to comment on how it should proceed. QualMed wrote numerous letters to OCHAMPUS and Department of Defense officials urging them to award the contract to QualMed notwithstanding the recommendation of the GAO, and urging OCHAMPUS to waive the OCI. In deciding what course of action to adopt, Captain John E. Montgomery in his Official Capacity as Director of OCHAMPUS ("Captain Montgomery") considered the following possible courses of action: (i) reawarding the contract to QualMed; (ii) conducting a new round of competition; and (iii) having the existing proposals reevaluated by other cost evaluators.

Captain Montgomery ultimately decided to accept the GAO's recommendation to award the contract to Foundation and explained his rationale in an August 30, 1995 memorandum. Among other things, Captain Montgomery reasoned that: (i) Foundation was evaluated the "best buy" at the time of the award to QualMed; (ii) recompetition would be expensive to the government and could delay selection of a final contractor by up to 18 months; (iii) if the procurement was recompeted, Aetna's continued performance under the existing contract pending award and transition to a new contractor would cost the agency millions of dollars more than if the contract was awarded to Foundation without a recompetition; (iv) recompeting the contract would place a severe strain on the agency's resources and would adversely affect other important aspects of OCHAMPUS' mission; (v) Foundation was a responsible offeror and very capable of performing managed care support for the states of California and Hawaii; and (vi) GAO's recommendation deserved deferential consideration in recognition of its role in preserving the integrity of government contracting. *See* Declaration of John E. Montgomery, Attachment 8 to Government's Response to Plaintiff's Motion for Preliminary Injunction (Montgomery Decl.).

With respect to the OCI, Captain Montgomery concluded that "[a]s a matter of public policy, the Department of Defense and OCHAMPUS were simply not going to award an important ... contract to an offeror which GAO had found was tainted with an organizational conflict of interest." Montgomery Decl. at ¶ 9. Further, "[t]he Department [of Defense] would not grant ... a waiver [of the OCI] in the face of the GAO decision. ... [G]ranting such a waiver would be inconsistent with the Department's desire to avoid even the appearance of impropriety in conjunction with the procurement process." Montgomery Decl. at ¶ 10.

Effective April 1, 1996, Aetna transferred the delivery of health care services to Foundation.[7] OCHAMPUS paid millions of dollars in connection with this transfer. Defendants and Intervenor–Defendant Foundation contend that the services provided under Foundation's contract are essential and that no one else is in a position to provide these services. Defendants and Foundation further contend that termination of the contract to Foundation and transition to another contractor would be costly and would adversely

---

7. I note for the record that Aetna opposed this transfer, as evidenced by the fact that Aetna filed suit in the U.S. District Court for the District of Southern California seeking a preliminary injunction enjoining the award of the contract to Foundation and to have the contract recompeted. Of course, that motion is not before me. However, I further note that Chief Judge Keep denied Aetna's motion finding, among other things, that the requirement of likelihood of success on the merits was not met because a recompetition was not required and the GAO's decision was neither arbitrary nor capricious.

impact the CHAMPUS beneficiaries by requiring them to undergo another change in health care coverage, their third transition since 1994.

## III. ANALYSIS

### A. Standard of Review

 The Court's review of the GAO's recommendation and OCHAMPUS' decision to adopt the recommendation is governed by Section 706 of the Administrative Procedure Act ("APA"). This statute provides, in pertinent part, that the court shall "hold unlawful and set aside agency action, findings, and conclusions of law found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. . . ." 5 U.S.C. § 706. The only material facts in an APA-review case are those contained in the administrative record; thus, it follows that I am not "free to hold a de novo hearing . . . and thereafter determine whether agency action was unwarranted by the facts." *Camp v. Pitts*, 411 U.S. 138, 141–142, 93 S.Ct. 1241, 1243, 36 L.Ed.2d 106 (1973).[8]

 In this case, both parties have moved for summary judgment. When a plaintiff who does not have the right to a de novo review brings an action to review an agency's findings based on the administrative record, "the case is ripe for summary disposition, for whether the order is supported by sufficient evidence, under the applicable statutory standard, or is otherwise legally assailable, involve matters of law." *Bank of Commerce of Laredo v. City Nat'l Bank*, 484 F.2d 284, 288 (5th Cir.1973), *cert. denied*, 416 U.S. 905, 94 S.Ct. 1609, 40 L.Ed.2d 109 (1974) (quoting 6 J. Moore, Federal Practice and Procedure ¶ 2716, at 430 (1973)). In other words, when the record in an APA-review case provides a substantial basis for the challenged agency action, it "foreclose[s] the existence of any material fact issues, [and] the entry of summary judgment [is] entirely proper." *Id.* at 289. Therefore, I find that this case is appropriate for resolution by summary judgment.

 For QualMed to prevail on its motion for summary judgment, it must show that OCHAMPUS' decision to follow the recommendation of the GAO was "arbitrary and capricious," i.e., irrational, or that the decision involved a clear and prejudicial violation of applicable statutes and regulations. *Honeywell, Inc. v. United States*, 870 F.2d 644, 647 (Fed.Cir.1989); *Kinnett Dairies, Inc. v. Farrow*, 580 F.2d 1260, 1270 (5th Cir.1978); *Kentron Hawaii, Ltd. v. Warner*, 480 F.2d 1166, 1169 (D.C.Cir.1973); *Halifax Technical Servs., Inc. v. United States*, 848 F.Supp. 240, 242 (D.D.C.1994). This, in turn, will require a showing that the GAO's decision itself is irrational. *Mark Dunning Indust. v. Cheney*, 726 F.Supp. 810, 814 (M.D.Ala.1989), *aff'd* 934 F.2d 266 (11th Cir. 1991) ("the court will evaluate the [agency's] decision by reference to the GAO's recommendation"). If QualMed fails to show that the GAO's recommendation was irrational or unlawful and thus fails to prevail on its motion, it follows that Defendants' and Foundation's summary judgment motion, wherein they assert that the GAO's recommendation was rational and lawful, must be granted.

 In deciding whether the GAO's decision was rational, I am guided by the following well established principles:

> The Supreme Court has held repeatedly that courts should respect an executive-branch agency's reasonable interpretation of statutes and regulations the agency is charged with administering. . . . Such deference is particularly appropriate in the procurement area, as there is a "strong public interest in avoiding disruptions in procurement, and for withholding judicial interjection unless it clearly appears that the case calls for an asserting of an overriding public interest". . . . Indeed, it is our recognition that "judges are ill-equipped to settle the delicate questions involved in procurement decisions, where long and complex factual histories, subtle economic factors and the need for expedi-

---

**8.** As explained by the Supreme Court in *Camp*, de novo review is only appropriate where there are inadequate factfinding procedures in an adjudicatory proceeding or where judicial proceed- ings are brought to enforce certain administrative actions. *Id.* at 142. I find that neither of those circumstances applies here.

tious buying decisions require assessments 'better left to the expertise of an executive agency.'" *Shoals American Indus. v. United States,* 877 F.2d 883, 888–89 (11th Cir.1989) (quoting cases). Accordingly, "whether it is reviewing the rationality of an agency procurement decision or determining that decision's compliance with federal law, a court should approach its task with deference and should interject itself only where the violation appears clear." *Cheney,* 726 F.Supp. at 814.

### B. *The GAO'S Authority in the Bid Protest Arena*

The GAO's authority is limited by the statutory provisions in the Competition in Contracting Act ("CICA"). CICA allows the GAO to determine whether a "contract for the procurement of property or services" complies with statutes and regulations, and permits the GAO to make certain recommendations. 31 U.S.C. §§ 3551, 3554 (Supp. 1996). The specific functions of the GAO in connection with bid protests are as follows:

> With respect to a solicitation for a contract, or a proposed award or the award of a contract, protested under this subchapter, the Comptroller General may determine whether the solicitation, proposed award, or award complies with statute and regulation. If the Comptroller General determines that the solicitation, proposed award, or award does not comply with a statute or regulation, the Comptroller General shall recommend that the Federal agency—
>
> (A) refrain from exercising any of its options under the contract;
>
> (B) recompete the contract immediately;
>
> (C) issue a new solicitation;
>
> (D) terminate the contract;
>
> (E) award a contract consistent with the requirements of the statute or regulation;
>
> (F) implement any combination of recommendations under clauses (A), (B), (C), (D), (E); or
>
> (G) implement such other recommendations as the Comptroller General determines to be necessary....

*Id.* at § 3554(b)(1).

 In the procurement process, the GAO has been recognized as an agent of Congress that "may not be entrusted with executive powers." *Bowsher v. Synar,* 478 U.S. 714, 732, 106 S.Ct. 3181, 3191, 92 L.Ed.2d 583 (1986). Given this limitation on the GAO's power, its bid protest decisions "are not binding on this court or the executive branch." *Delta Chemical Corp. v. West,* 33 F.3d 380, 382 (4th Cir.1994). While an executive agency, such as OCHAMPUS, may follow a GAO recommendation when it is persuasive and rational, it must fully and independently evaluate that recommendation and "has a responsibility to make up its own mind and to act on its own advice." *IMS Servs., Inc. v. United States,* 33 Fed.Cl. 167, 184 (1995). A procurement decision is not irrational simply because the court might have reached a different decision. *Elcon Enterprises v. Washington Metro. Area Transit Auth.,* 977 F.2d 1472, 1478 (D.C.Cir. 1992).

 However, the GAO's decision is entitled to great deference because it is the decision of a tribunal with longstanding expertise. *Halifax,* 848 F.Supp. at 243. Thus, although the agency must perform an independent analysis of the recommendation,

> Congress contemplated and intended that procurement agencies normally would follow the Comptroller General's recommendation. Congress viewed an agency's failure to do so as sufficiently unusual as to require the agency to report such noncompliance to the Comptroller General and to require the latter to inform Congress of any instances of noncompliance. In these circumstances, a procurement agency's decision to follow the Comptroller General's recommendation, even though that recommendation differed from the contracting officer's initial decision, was proper unless the Comptroller General's decision itself was irrational.

*Honeywell,* 870 F.2d at 648.

### C. *The GAO's Decision was Neither Irrational Nor Contrary to Law*

QualMed asserts that the GAO's decision was unlawful or an abuse of discretion be-

cause: (i) the GAO exceeded its authority and acted irrationally when it refused to defer to OCHAMPUS' interpretation of the OCI regulation, and recommended that the 1994 Plan be voided and the contract awarded to Foundation; (ii) the GAO exceeded its authority by presuming prejudice to Foundation without finding actual bias; and (iii) the GAO violated Federal Acquisition Regulation ("FAR") 9.504(e) by failing to consider mitigation measures and depriving QualMed of due process of law.[9] QualMed further asserts that the GAO was wrong in concluding that: (i) the 1994 Plan did not disclose certain information; (ii) Lewin was responsible for the award of the contract to QualMed; (iii) the conflict between Lewin and VHS was *de minimus* and that the conflict between Lewin and VBH was *per se* unlawful (i.e., unmitigatable); and (iv) QualMed was blameworthy in connection with the OCI or was responsible for statements made by Lewin and VBH in their private dealings with OCHAMPUS. Finally, QualMed asserts that the GAO's decision was irrational because it contained no meaningful analysis of the conflict of interest issue.

QualMed also asserts that the decision by Captain Montgomery of OCHAMPUS was unlawful because he failed to engage in reasoned decisionmaking and to explain the rationale for his decision. In that regard, QualMed argues that Captain Montgomery's August 30, 1995 decision "accepted" the GAO's findings without any analysis of whether they were correct or even reasonable.

Defendants and Intervenor–Defendant Foundation contest QualMed's arguments, asserting that there was no "clear and prejudicial" procedural impropriety associated with the award of the contract to Foundation and that the GAO's recommendation was rational. They further argue that OCHAMPUS' reliance on the GAO's expertise alone was enough to make its decision to adopt the recommendation rational. Defendants and Foundation also argue that, even if the

GAO's recommendation was irrational, this does not mean that OCHAMPUS' decision was irrational. There could be rational reasons why the executive branch might decide to implement a GAO decision with which it disagreed. *See Delta Data Sys. Corp. v. Webster*, 744 F.2d 197, 202 n. 2 (D.C.Cir. 1984) (holding that even when a GAO decision is incorrect, in at least some circumstances an agency's acquiescence in it as a means of minimizing a conflict with another arm of government may preclude a finding that the agency's action was arbitrary or capricious); *Gould, Inc. v. Chafee*, 450 F.2d 667, 668 (D.C.Cir.1971) (holding that it was unlikely that agency's decision to terminate contract could be found arbitrary and capricious, whether based on agreement with apparently reasonable GAO decision or on acquiescence to avoid conflict).

Finally, Defendants and Intervenor–Defendant Foundation argue that, even if the Court were to find the agencies' decisions to be irrational or contrary to law, the maximum relief QualMed could receive is an order requiring OCHAMPUS to provide it another opportunity to be heard on the OCI issue under FAR 9.504(e), an opportunity it already had and has taken advantage of repeatedly. Defendants argue that under no circumstances is QualMed entitled to its requested relief, i.e., a "re-award" of the contract to QualMed. I address these arguments below.

1. *The GAO's Refusal to Defer to OCHAMPUS' Interpretation of FAR 9.501 and Execution of the 1994 Plan was not Irrational or Contrary to Law.*

▮▮▮ QualMed argues that, under CICA, the GAO is allowed only to consider protests concerning "a contract for the procurement of property or services," and to make certain recommendations if it believes an executive agency has violated statutes or regulations in connection with the award of such a contract. 31 U.S.C. §§ 3551(1)(A), 3554(b)–(c). QualMed asserts that the GAO has recog-

---

9. Defendants object to QualMed's arguments that the GAO exceeded its authority on the basis that these arguments are not timely since they were not raised to either the GAO or OCHAMPUS. Although this may be technically true, I must view the evidence in the light most favorable to QualMed. Thus, for purposes of Defendants' and Intervenor–Defendant Foundation's motions for summary judgment, I consider these arguments to be timely raised.

nized that its authority is limited to review of procurement contracts of property or services, citing *Jefferson Bank & Trust,* B–228563, October 23, 1987, 87–2 CPD ¶ 390 and *Energy Conversion Devices, Inc.,* B–22260514, June 16, 1995, 95–2 CPD ¶ 121.

QualMed admits that the California/Hawaii contract is such a procurement contract, and that the GAO has authority to issue nonbinding recommendations that the agency terminate the contract. Further, QualMed impliedly admits that the GAO had the authority to recommend that the contract be awarded to Foundation.[10] The action that QualMed objects to is the GAO's alleged instruction to OCHAMPUS to terminate the 1994 Plan, since QualMed argues that such plan is not a procurement contract over which the GAO had authority. Implicit in this argument is QualMed's further assertion that the GAO's finding that the OCI could not be mitigated by the 1994 Plan violated the basic tenet of law that "an agency's interpretation of its own regulations is normally entitled to considerable deference," and that interpretation ordinarily will be accepted "unless it is plainly erroneous or inconsistent with the regulation." *Perry v. Martin Marietta Corp.,* 47 F.3d 1134, 1137 (Fed.Cir.1995) (citing *Udall v. Tallman,* 380 U.S. 1, 16–17, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965)).

Defendants and Intervenor–Defendant Foundation assert that QualMed's argument is without merit because, among other reasons, the GAO did not instruct OCHAMPUS to abrogate the 1994 agreement. Further, Defendants and Foundation argue that QualMed has cited no authority for a "nonprocurement contract" limitation on the GAO's authority, and that the GAO clearly has authority to review agency decisions regarding the sufficiency of OCI mitigation measures in government contracts.

I agree with Defendants and Intervenor–Defendant that the GAO did not actually recommend abrogation of the 1994 Plan; instead, it recommended termination of the QualMed award due to the finding of an unmitigated and unmitigatable conflict of interest. However, I further note that in find-

ing the OCI, the GAO concluded that OCHAMPUS was wrong in its determination that the 1994 Plan adequately mitigated the conflict. *See* GAO Decision at 16. This finding, in effect, required abrogation of the 1994 Plan by OCHAMPUS. Thus, I must determine whether the GAO's findings and recommendation were rational and within its authority.

First, I find that the GAO had the authority to review OCHAMPUS' determination regarding the adequacy of the 1994 Plan to mitigate the OCI. In fact, this goes to the heart of its authority, as the GAO must determine whether contracts are awarded in accordance with procurement statutes and regulations, including the regulations regarding OCI's. *See* 31 U.S.C. § 3554(b)(1); 48 C.F.R. §§ 9.501–9.504. In making this determination, the GAO may overturn an agency's determination as to whether an actual or apparent conflict of interest exists and whether it can be mitigated if the agency's determination is unreasonable. *Ressler Assoc., Inc.,* B–244110, September 9, 1989, 91–2 CPD ¶ 230 at 2–3.

The *Ressler* opinion explained both the contracting officer's responsibility in connection with conflicts of interest as well as the GAO's standard of review of the contracting officer's determination as follows:

> The contracting officer is responsible for identifying and resolving conflicts based on the particular facts of the procurement and, in so doing, must exercise 'common sense, good judgment and sound discretion'.... The FAR expressly directs the contracting officer to withhold a contract award when a conflict cannot be avoided or mitigated.... Our office will overturn a contracting officer's determination regarding a conflict of interest only if it is shown to be unreasonable.

*Id.* (citations omitted); *see also GIC Agric. Group,* B–249065, October 21, 1992, 92–2 CPD ¶ 263 at 10; *ICF, Inc.,* B–241372, February 6, 1991, 91–1 CPD ¶ 124 at 4–5. Obviously, since the GAO has the authority to determine whether the agency's findings re-

---

**10.** 31 U.S.C. § 3554 is the obvious source of this authority, since it gives the GAO authority to terminate a contract and award it to one who complies with statutes and regulations.

**1240**

garding an OCI are reasonable, it follows that the GAO also has the authority to determine whether mitigation plans approved by the agency are reasonable.

■ If the GAO concludes that a contract is infected by a conflict of interest that can not be mitigated, nonenforcement of the contract is required. *United States v. Mississippi Valley Generating Co.*, 364 U.S. 520, 565, 81 S.Ct. 294, 317, 5 L.Ed.2d 268 (1960). This is true "even though the conflict of interest was caused or condoned by high government officials." *Id.* As the Supreme Court in *Mississippi Valley* observed:

Although nonenforcement frequently has the effect of punishing one who has broken the law, its primary purpose is to guarantee the integrity of the federal contracting process and to protect the public from the corruption which might lie undetectable beneath the surface of a contract conceived in a tainted transaction. It is this inherent difficulty in detecting corruption which requires that contracts [containing a conflict of interest] be held unenforceable, even though the party seeking enforcement ostensibly appears entirely innocent.

*Id.* at 564–65, 81 S.Ct. at 317.

Similarly, in *NKF Engineering, Inc. v. United States*, 805 F.2d 372 (Fed.Cir.1986), a contractor was disqualified from receiving an award of a contract due to an appearance of impropriety in that the contractor had access to insider information from the group charged with overseeing the contractor selection process. The Federal Circuit held that the commanding officer had the right to disqualify the contractor, stating "when a CO perceives a strong appearance of impropriety in a situation not precisely covered by [a particular regulation], it would undermine Congressional concern in the conflict of interest area to tie the hands of the CO." *Id.* at 377. *See also Compliance Corp.*, 22 Cl.Ct. 193, 200–01 (1989) (same).

In the case at hand, QualMed argues that the GAO's decision contained no meaningful analysis of the conflict of interest issue and stated multiple grounds, none adequately explained, for its conclusion. I do not agree. First, the GAO found that an OCI did exist in QualMed's proposal since, given the rela-

tionship between Lewin and VBH, Lewin was "potentially unable to render impartial assistance or advice" to OCHAMPUS. *See* 48 C.F.R. § 9.501. QualMed has presented no evidence which refutes this finding.

Further, with respect to the 1994 Plan, the GAO made detailed findings as to why OCHAMPUS' determination that this plan adequately mitigated the conflict was unreasonable. These findings included, among others, the following:

OCHAMPUS ... failed to take reasonable steps to learn the relevant facts about the organizational conflict of interest ... [since] OCHAMPUS ... made no inquiry beyond the four corners of Value Health's own partisan presentation of the facts in its 1994 plan.... Essentially, OCHAMPUS left the gathering of relevant facts and, indeed, the resolution of the conflict of interest here to Lewin–VHI and VBH, just as the evaluation of cost proposals had been left, by default, to Lewin–VHI. Although there is no evidence of intent to misrepresent the facts, Value Health presented OCHAMPUS with a plan which was incomplete and inaccurate, thereby understating the significance of the conflict of interest. In our view, allowing the private firm whose conflict of interest is at issue to decide how to describe and resolve that conflict is unreasonable on its face, regardless of the capabilities and integrity of that firm and its employees.

GAO Decision at 15–16.

The GAO rejected OCHAMPUS' determination that a Chinese wall arrangement would be satisfactory for resolving the conflict and that, "due to the absence of financial or other pressure on the individual Lewin–VHI evaluators, the 1994 plan mitigated Lewin–VHI's [OCI]." The GAO held that these conclusions were unreasonable since the conflict at issue related to "potentially impaired ability" which could not be resolved through a "Chinese wall" arrangement as proposed in the Plan. *Id.* at 16. Further, the GAO explained why, regardless of the 1994 Plan, the OCI simply could not be mitigated. This was due to the significant dollar value of the VBH subcontract, the historical

role of Lewin in the procurement, and the subjective nature of the evaluation of probable health care costs in which Lewin was involved.

I find that the GAO's articulated reasons for its finding that OCHAMPUS' reliance on the 1994 Plan to mitigate the OCI was unreasonable are rational and lawful as is the further finding that the OCI is, in fact, unmitigatable. This is particularly true since QualMed has presented no evidence to contest many of the GAO's key findings, including Lewin's substantial role in the procurement and the fact that the contracting officer had very little, if any, involvement in the resolution of the conflict of interest. There is precedent to support a finding that the relationship between two wholly-owned subsidiaries calls into question the ability of one of those firms to render impartial advice to the Government when evaluating a proposal in which the other is involved, and that this constitutes an OCI. *See ICF,* 91–1 CPD ¶ 124 at 5. Further, there is precedent to hold QualMed, as prime contractor, ineligible for the contract award based on actions of its subcontractor. *TeleLink Research, Inc.— Recon.,* B–247052.2, Sept. 28, 1992, 92–2 CPD ¶ 208 (subcontractor's alleged misrepresentation attributed to offeror); *see also CACI, Inc.–Federal,* 88–1 BCA ¶ 20,336 at 102,846 (evidence that awardee would have done as well in the evaluation without the subcontractor who created an OCI is irrelevant; the purpose of the OCI rules is to avoid the need for such an inquiry).

I further note that since Captain Montgomery asserted, and it has not been disputed, the agency lacked the resources to conduct another round of competition or evaluations. Thus, the recommendation that the terminated contract be awarded to Foundation was not irrational. Since I find that the GAO's actions were neither irrational nor contrary to law, the GAO's refusal to defer to OCHAMPUS' reliance on the 1994 Plan to mitigate the OCI was reasonable and consistent with the GAO's discharge of its lawful responsibilities.

### 2. The GAO Did Not Exceed Its Authority by Presuming Prejudice to Foundation without Finding Actual Bias

■■■ QualMed argues that even though the GAO found that the Lewin evaluators "were not biased in their evaluation," "did not have any direct financial interest in the outcome of the competition" and had conducted their evaluation without any "financial or other" improper motive, the GAO developed a new rule for this case. This "rule" is that whenever there is an OCI matter, other than a *de minimus* matter, prejudice would be presumed, i.e., protestors could prevail without having to show they were prejudiced. QualMed asserts this is contrary to FAR subpart 9.501, in that this required the GAO to find that Lewin was actually unable to be impartial, which the GAO did not find. In fact, it found the opposite. GAO Decision at 19.

QualMed further asserts that the GAO's rejection of the need to show prejudice was incorrect as a matter of law and was unlawful. Moreover, QualMed argues that the mere possibility that the protester would have received the contract but for the procuring agency's error is inadequate to show prejudice, relying on *Data General Corp. v. Johnson,* 78 F.3d 1556, 1562 (Fed.Cir.1996). Instead, QualMed asserts that the appropriate standard to establish prejudice is that the "protester must show that, had it not been for the alleged error in the procurement process, there was a reasonable likelihood that the protestor would have been awarded the contract." *Id.* No such showing was made according to QualMed; instead, the GAO simply presumed prejudice based on its erroneous conclusion that the selection of QualMed was largely based on the evaluation conducted by Lewin.[11]

Foundation admits that "actual bias" on the part of Lewin was not found by the GAO

---

11. QualMed further argues that Foundation was, in fact, not prejudiced because the GAO's conclusion that Lewin was substantially responsible for the award going to QualMed was erroneous. QualMed argues that the GAO arrived at this conclusion without the benefit of evidence because the subject was never addressed in the GAO proceeding. This evidence would have shown that it was ARC's evaluation, not Lewin's, that resulted in Foundation having a higher weighted risk factor and a higher total expected cost to the Government than QualMed.

but disputes that this must be proved. Foundation argues that the GAO's conclusion was fully consistent with case law on showing bias and prejudice in conflict of interest situations, and that *Data General* is not applicable since it did not involve an OCI. I agree. The GAO's decision was not based on "actual bias," but instead on an appearance of impropriety. Cases considering this issue have concluded, contrary to QualMed's contention, that an appearance of impropriety is a sufficient basis on which to find an OCI, and that actual bias and/or prejudice need not be shown.

This precise issue was addressed in *Central Arkansas Maintenance, Inc. v. United States*, 68 F.3d 1338, 1343 (Fed.Cir.1995), wherein the court explicitly recognized the distinction between the prejudice requirement in cases involving violations of "commonplace" procurement statutes and those turning on violations of conflict of interest statutes. In the latter situation, actual harm is not required. *Id.; see also Mississippi Valley*, 364 U.S. at 564, 81 S.Ct. at 316 (contracts with illegal conflicts of interest are invalid even if the contractor is innocent); *TRW*, 18 Cl.Ct. at 67 (a showing of prejudice is unnecessary when the facts establish a conflict of interest; *NKF*, 805 F.2d at 375–76 (appearance of impropriety enough to warrant disqualification, proof of actual harm or prejudice is unnecessary).

Moreover, I agree with Defendants that the statute regarding OCI's does not require that the party actually be unable to render impartial advice to the government. Instead, it states that an OCI exists where "because of other activities or relationships with other people, a person is unable *or potentially unable* to render impartial assistance or advice to the Government, or the person's objectivity ... is *or might be* otherwise impaired." 48 C.F.R. § 9.501 (emphasis added).

### 3. The GAO and OCHAMPUS Did Not Violate QualMed's Due Process Rights and FAR 9.504(e)

#### a. QualMed's Due Process Argument with respect to FAR 9.504(e)

QualMed argues that it was denied due process because FAR 9.504(e) was violated.

That regulation requires a contracting officer, before withholding an award to a successful offeror because of an unmitigatable conflict of interest, to give the apparent awardee a statement of the "reasons" why he believes such a conflict exists and a reasonable opportunity to respond to the statement. QualMed argues that the GAO's recommendation was an investigation that ultimately gave rise to the "statement of reasons" why an OCI existed. After OCHAMPUS decided to accept the GAO's "statement of reasons" for the existence of an OCI, QualMed should have been allowed to respond pursuant to the regulation, which it was not allowed to do.

QualMed asserts that to hold otherwise would violate the due process clause which entitles a party to know, in advance, "the issues on which the decision will turn and to be apprised of the factual material" on which an agency relies "so that he may rebut it." *Bowman Trans., Inc. v. Arkansas–Best Freight Sys., Inc.*, 419 U.S. 281, 288, 95 S.Ct. 438, 443 n. 4, 42 L.Ed.2d 447 n. 4 (1974); *Delta Data Sys.*, 744 F.2d at 203 (abuse of discretion for agency to act on information without giving offeror in procurement an opportunity to address it).

■ In response, Defendants argue that due process is not implicated under FAR 9.504(e) because the statute is not applicable to contracts after award, only before award. My analysis of the statute confirms the validity of this argument. The statute provides, in relevant part:

> Using the general rules, procedures, and examples in this subpart, contracting officers shall analyze planned acquisitions in order to—(1) Identify and evaluate potential organizational conflicts of interest as early in the acquisition as possible; and (2) Avoid neutralize, or mitigate significant potential conflicts **before contract award.**

> . . . . .

> **Before issuing a solicitation for a contract that may involve a significant potential conflict,** the contracting officer shall recommend to the head of the contracting activity a course of action for resolving the conflict. The contracting

officer shall award the contract to the apparent successful offeror unless a conflict of interest is determined to exist that cannot be avoided or mitigated. **Before determining to withhold award** based on conflict of interest considerations, the contracting officer shall notify the contractor, provide the reasons therefor, and allow the contractor a reasonable opportunity to respond. If the contracting officer finds that it is in the best interest of the United States to award the contract notwithstanding a conflict of interest, a request for waiver shall be submitted in accordance with 9.503....

*Id.,* 9.504(a)(1)–(2), (c), (e) (emphasis added).

██ Clearly, the language of the regulation applies to conflicts that are recognized before the contract is awarded. There is nothing in the plain language of the statute that applies the rule to a contract termination situation, or to an agency's decision to follow a GAO decision recommending award of a contract to an entity other than the one whose contract was terminated due to an unmitigatable OCI. The regulatory history of the regulation also supports this conclusion: "[a]gency officials must, **before an award of contract is made,** determine whether a conflict of interest exists.... **Before** the contracting officer decides not to award a contract based on conflict of interest considerations, he or she shall notify the prime contractor...." *See* Office of Procurement Policy Letter on Consultants and Conflict of Interest, 54 Fed.Reg. 51,805, 51,-809 (Dec. 18, 1989) (emphasis added).

### b. *Other Due Process Arguments*

QualMed also asserts that it was not allowed to present certain arguments to the GAO and/or OCHAMPUS, which violated its due process rights. Specifically, QualMed argues that it was precluded from presenting possible mitigation measures for the conflict, and that the GAO decided matters that had not been addressed by the parties including: (i) Lewin's involvement in the judgment that Foundations' proposal was less advantageous than QualMed's proposal; (ii) the creation of the alleged fiction of OCHAMPUS' consultant Lewin evaluating its own proposed mental health services; and (iii) the presence or absence of blame on the part of QualMed. QualMed contends that if it had been allowed to respond to these issues, it would have presented evidence that seriously undermined the GAO's conclusions.

Foundation asserts that QualMed previously raised all these arguments before the GAO and/or OCHAMPUS except one, which is addressed below, and that QualMed had three different opportunities to present such arguments. Further, Foundation argues that QualMed was provided an additional opportunity to respond **after** GAO announced its decision. In that regard, QualMed's views on how OCHAMPUS should respond to GAO's recommendation were invited and considered, and QualMed wrote numerous memoranda and letters to OCHAMPUS on this point. Foundation argues that the *NKF* case stands for the proposition that any requirement that a contractor be given an opportunity to be heard on an OCI issue is satisfied by a GAO protest hearing.

██ I agree that *NKF* is controlling on this issue. In *NKF,* a contractor argued that the government's formal decision to disqualify it was not received until after the decision was made, thus violating its due process rights. The Federal Circuit Court of Appeals rejected this argument, and held that "[t]he protest procedures before the General Accounting Office to which NKF resorted before coming here were certainly sufficient to satisfy any due process requirements inherent in plaintiff's disqualification." *Id.,* 805 F.2d at 377–78. Thus, QualMed's participation in the GAO hearing and later communications with OCHAMPUS satisfy due process with regard to the OCI issue involved in this case and the GAO's findings that were made in connection with same. *See also Ressler,* B–244110, September 9, 1991, 91–2 CPD ¶ 230 at 4 (an agency's failure to afford a tainted offeror with the FAR 9.504(e) opportunity to respond to the agency's OCI disqualification was a mere procedural defect that did not affect the proprietary of the disqualification).

QualMed's due process argument appears to place particular emphasis on the alleged finding by the GAO of blame on the part of QualMed. QualMed argues that courts have been particularly attentive to allowing a contractor to refute allegations when its integrity is impugned. First, I note that the GAO found that QualMed did not adequately fulfill its responsibilities in connection with the proposal and was "plainly willing to benefit from VBH's affiliation with Lewin–VHI." GAO Decision at 22. However, the GAO specifically stated that "there is no evidence that the parties acted in bad faith." *Id.* Thus, it is questionable whether the GAO's findings did impugn QualMed's integrity. Second, even if I assume that the GAO's findings did place blame on QualMed or otherwise impugn its integrity, I note that any such finding was not dispositive of its recommendation, as the GAO based its finding simply on the appearance of impropriety that arose from Lewin's involvement. Blame is irrelevant to a finding that a conflict exists due to an appearance of impropriety. *Mississippi Valley*, 364 U.S. at 564–65, 81 S.Ct. at 316–317.

Nonetheless, I find that, contrary to QualMed's contention, QualMed did have an opportunity to address this issue at the hearing before the GAO, as evidenced by the GAO's statement in the record that QualMed argued in the hearing that "its actions were reasonable and cannot fairly be criticized" such that QualMed should not be disqualified. *See* GAO Decision at 21. Further, QualMed had an opportunity to address the GAO's findings after the decision was made. This satisfied QualMed's due process rights. *NKF*, 805 F.2d at 377–378; *see also Refine Constr. Co. Inc. v. United States*, 12 Cl.Ct. 56, 67 (1987) (a decision not to award a contract to a party whose proposal contains a conflict of interest does not implicate due process where the contractor "was not barred from seeking other contracts with the [agency at issue] or with any government agency").

The one argument of QualMed that Defendants concede was not presented to GAO or OCHAMPUS is QualMed's argument that it was ARC who made the determination to award the contract to QualMed rather than Lewin, which QualMed contends contradicts the GAO's factual findings regarding Lewin's and ARC's respective roles. QualMed's attempt to separate the evaluations made by ARC from those made by Lewin is meaningless because GAO found, and QualMed has not established to the contrary, that · Lewin and ARC operated as members of a single evaluation team and Lewin was involved in the evaluation of all "cost trend factors," including those for which ARC had primary responsibility. Since the GAO made detailed findings in this regard that I find to be rational and well reasoned, I will not second guess the GAO's decision. Further, QualMed's failure to raise this argument before the GAO precludes any finding that the GAO's findings in this regard were irrational. *See Kent County, Del. Levy Court v. EPA*, 963 F.2d 391, 398–99 (D.C.Cir. 1992); *Northside Sanitary Landfill, Inc. v. Thomas*, 849 F.2d 1516, 1519 (D.C.Cir.1988), *cert. denied*, 489 U.S. 1078, 109 S.Ct. 1528, 103 L.Ed.2d 833 (1989).

### 4. *GAO and OCHAMPUS Violated FAR 9.504(e) by Failing to Consider Mitigation Measures*

QualMed asserts that the GAO's alleged finding that the conflict was *per se* unmitigatable was irrational and/or unlawful because FAR 9.504(e) required OCHAMPUS to make every reasonable effort to assist QualMed in mitigating any conflict that threatened QualMed's status as awardee, which it did not do. First, I disagree that FAR 9.504(e) required OCHAMPUS after the award to assist QualMed in mitigating the conflict, since I previously found that FAR 9.504(e) applies only to pre-award and not post-award situations.

Second, even if FAR 9.504(e) applied to post-award claims, the GAO was clear in stating that it was not finding that the conflict was *per se* incapable of mitigation; instead, it considered mitigation and determined that the OCI could not be mitigated. The GAO found that the OCI could not be mitigated for a number of rational reasons, including "the prospect that it [Lewin–VHI] would be unable to render impartial

advice to OCHAMPUS." GAO decision at 17–18. The GAO's ultimate conclusion was that "the appearance of impropriety resulting from the significant organizational conflict of interest present here rendered the award to QualMed and VBH improper." GAO decision at 19–20. This was not irrational, since a contract that has a conflict of interest arising from even an appearance of impropriety may be terminated by GAO and rendered unenforceable without a showing of actual harm or prejudice. *NKF*, 805 F.2d at 376–77; *Central Ark. Maintenance*, 68 F.3d at 1343.[12]

### 5. GAO Exceeded its Authority by Disqualifying QualMed from the Competition

▇▇▇▇ QualMed argues that the GAO's recommendation that OCHAMPUS disqualify QualMed from the competition altogether and award the contract to Foundation exceeded its authority. I find this argument to be somewhat of a red herring, since QualMed essentially concedes that GAO had the authority to terminate QualMed's contract and award it to Foundation without recompetition so long as Foundation's contract complied with all applicable statutes and regulations. Clearly, GAO has such authority pursuant to 31 U.S.C. § 3554(b)(1)(D) and (E) and did not have to recommend that the contract be recompeted.[13]

Moreover, although QualMed argues that it was disqualified, this did not occur. QualMed's contract was terminated and did not remain viable for purposes of a reprocurement. Finally, the end result of his contracting process was not a "reprocurement"; instead, the contract was awarded to a different contractor, i.e. Foundation, based on the existing procurement.

The real thrust of this argument appears to be QualMed's assertion that, while the GAO has the authority to recommend the award of a new procurement contract, it has no ability to recommend an award that would *itself* violate the procurement rules. This is really an assertion that GAO violated FAR 9.504(e) when it did not give QualMed an opportunity to respond and cure the OCI problems, an argument I have previously considered and rejected.

### 6. Other Reasons that GAO's Decision was Arbitrary or Capricious

QualMed makes other arguments attacking the GAO's findings of various factual issues, including assertions that the GAO was wrong in finding that the 1994 Plan did not disclose certain information or that VBH and Lewin are affiliated corporations. All of these arguments were previously raised to the GAO and decided adversely against QualMed after a lengthy evidentiary hearing. I agree with Defendants that QualMed should not be permitted to use the Court's summary judgment procedures to relitigate

---

**12.** I also note that mitigation measures could not have been accepted by OCHAMPUS after award of the contract if such measures would have required a significant change to QualMed's proposal. After the submission of best and final offers, no offeror may be permitted to change its proposal unless all offerors are given that opportunity and a new round of competition is held. 48 C.F.R. §§ 15.601, 15.611(c). Further, to the extent that QualMed may be asserting declaratory relief that OCHAMPUS can waive the OCI, based on an argument that the Department of Defense did not waive the OCI simply because it was uncertain whether an OCI could be waived after a GAO decision, this argument is without merit. First, as stated above, OCHAMPUS clearly had reasons other than any uncertainty that it had about its ability to waive the OCI for not taking that action. As it recognized, waiver of the OCI would not have been appropriate given the GAO's conclusion that the OCI could not be waived. Further, waiver of an OCI is appropri-

ate only if there is no party other than the conflicted party which can perform the contract at issue. *See Radiation Safety Servs., Inc.*, B–237138, January 16, 1990, 90–1 CPD ¶ 56 at 4.

**13.** Moreover, another round of best and final offers may be requested by a procuring agency only when it is "clearly in the Government's interest to do so." FAR 15.611(c), 48 C.F.R. § 15.611(c). I find that OCHAMPUS has presented a rational reason why it is not in OCHAMPUS' interest to do so, since it asserts that the procurement is already two years behind schedule and that any further competition would cripple the agency's ability to fulfill a key, statutorily mandated mission, contrary to public interest. This finding is supported by Judge Keep's ruling in Aetna's motion for preliminary injunction, wherein she found that the decision not to have another round of competition was reasonable and not contrary to law.

all of the factual contentions that it unsuccessfully raised with the GAO.

Moreover, the GAO's decision was based primarily on the appearance of impropriety that arose from Lewin's involvement in the procurement. Thus, even if I accept QualMed's arguments as true, that the GAO was wrong in certain of its factual findings, this does not change the fact that QualMed's use of VBH as a subcontractor while its affiliate, Lewin, played a key role in the procurement, gave rise to at least an appearance of impropriety. Thus, the GAO's recommendation that the contract be terminated was not irrational.

### D. *OCHAMPUS' Decision to Adopt the GAO's Recommendation was not Irrational or Contrary to Law*

Finally, QualMed argues that OCHAMPUS' decision to adopt the GAO's recommendation was irrational or contrary to law. In that regard, QualMed asserted in its preliminary injunction motion that Captain Montgomery's decision was flawed because he simply accepted the GAO's decision without considering the errors in the decision, and because he apparently determined that QualMed's proposal was irrelevant. QualMed asserts that the GAO's decision required that OCHAMPUS reconsider all the proposals in the absence of a determination that QualMed should be disqualified.

 As previously noted, an agency has the authority to adopt or reject the GAO's recommendation. So long as the GAO's decision is rational, and the agency independently reviews the recommendation to decide whether to adopt it, the agency's decision to adopt the recommendation is valid. *IMS*, 33 Fed.Cl. at 184. In the case at hand, Captain Montgomery invited comments from QualMed on how to proceed with respect to the GAO's decision and considered a variety of possible actions, including rewarding the contract to QualMed, having the agency conduct another round of competition, and having the existing proposals reevaluated by other cost evaluators. Captain Montgomery ultimately decided to accept the GAO's recommendation to award the contract to Foundation and issued a detailed memorandum explaining his reasons. Among these reasons included his conclusions that the agency lacked the resources to conduct another round of competition or evaluations for the contract, further recompetition would not be fair or proper given the regulatory restrictions, and that, as a matter of public policy, the Department of Defense and OCHAMPUS would not agree to award an important contract to an offeror which the GAO had found was tainted with an organizational conflict of interest. Further, they would not grant a waiver of such OCI because it would be inconsistent with avoiding even the appearance of impropriety in conjunction with the procurement process.

I believe that it is clear from the foregoing that Captain Montgomery independently reviewed the GAO's recommendation and made specific detailed findings as to why he decided to· adopt the GAO's recommendation. Further, the foregoing demonstrates that Captain Montgomery's decision to accept the recommendation was rational, as was the decision not to conduct another round of competition or reevaluate existing proposals. Finally, I previously found that the GAO's decision was rational and not contrary to law. Accordingly, OCHAMPUS' decision to adopt the GAO's recommendation was not irrational.

### E. *QualMed is not Entitled to a Permanent Injunction or Reaward of the Contract*

Having found that QualMed does not succeed on the merits of its claim, I need not consider the remaining elements necessary to obtain a permanent injunction. QualMed's request for a permanent injunction is hereby DENIED as is QualMed's request that the contract be reawarded to it.

## IV. *CONCLUSION*

In conclusion, I find that the GAO did not exceed its authority in reviewing the conflict of interest issue, including the adequacy of the 1994 VBH/Lewin agreement. The GAO has the authority to review contracts for a violation of statute or regulation, and must overturn the agency's actions regarding OCI's if the actions were unreasonable. I find that the GAO's decision that OCHAMPUS' determination that the 1994 Plan ade-

quately mitigated the OCI was unreasonable is rational and well reasoned, and must be upheld. Further, I find that GAO did not exceed its authority by recommending termination of the contract award to QualMed when it found that the OCI could not be mitigated due to the appearance of impropriety arising from Lewin's dual roles in the procurement.

I also find that the GAO's recommendation to award the contract to Foundation without recompeting the contract was rational and lawful, especially since it determined it was in the best interests of the government to award the proposal to Foundation, the "best-buy" offeror, without incurring the expense of another reprocurement. Further, I find that FAR 9.504(e) is inapplicable to the contract at issue as it applies only pre-award. Finally, I find that there were no due process violations by the GAO or OCHAMPUS.

Accordingly, I find that the GAO's decision was not arbitrary or capricious, an abuse of discretion or contrary to law. I further find that OCHAMPUS' decision to adopt the GAO's recommendation was rational and reasonable. It is thus

ORDERED that Defendants' and Foundation's Joint Motion for Summary Judgment is GRANTED. It is

FURTHER ORDERED that QualMed's Motion for Summary Judgment is DENIED.